IRVING S. MERRELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70103.   Promulgated November 29, 1935.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $5,099.83 in the petitioner's income tax for 1930. The case was submitted upon a stipulation of facts without any appearances. The petitioner sold 1,000.16 shares of Borden Co. common stock in 1930 for $67,045.05.

The petitioner reported his profit, using $63,800.21 as his basis for gain or loss on the sale of those shares. The Commissioner contends that the basis is only $24,126.70. The sole issue in this proceeding is therefore the cost to the petitioner of that Borden stock.

The petitioner acquired the Borden stock in 1928 in exchange for all of his common and preferred stock of the Merrell-Soule Co., in a statutory reorganization. The parties agree that the total cost to the petitioner of the common and preferred stock of Merrell-Soule Co. is to be allocated proportionately to the Borden shares. This is in accordance with the decision of the Board in *Christian W. Von Gunten*, 28 B. T. A. 702; affd., 76 Fed. (2d) 670. They also agree as to the cost of all of the common and preferred shares of the Merrell-Soule Co. except 875 shares of common stock. The Commissioner determined that the cost of those shares was $100 per share, or $87,500. The parties agree that the deficiency is correct if the cost of those shares was $87,500.

The 875 shares in question were acquired by the petitioner from the estate of his father. The father, G. Lewis Merrell, died testate on January 7, 1909. He owned at that time 2,625 shares of the common stock of the Merrell-Soule Co. Each share had a par value of $100. He placed his residuary estate, including these shares, in trust. The trustees were to pay $5,000 annually to his wife, Mary A. Merrell, during her lifetime. Each grandchild of the decedent was to receive $3,000 from the trustees when he reached his majority. The remainder of the income was to be divided equally among the testator's three sons, Irving S. Merrell, Lewis C. Merrell, and Oliver Edward Merrell. The principal of the fund, except the Merrell-Soule Co. stock, was to be divided equally among the three sons upon the death of the testator's wife. The Merrell-Soule Co. stock was to be held by the trustees during the lifetime of Oliver Edward Merrell and the income therefrom was to be equally divided among the three sons. The stock was to be divided into three equal parts upon the death of Oliver Edward Merrell and each son or his estate was to have one share. The thirteenth and fourteenth articles of the will were as follows:

ARTICLE THIRTEENTH. I further will and direct that none of my said sons shall in any manner sell or dispose of any of said stock or any interest therein unless he shall have first offered it to both or either of the others of my said three sons at a price not to exceed the par value thereof, and given to each of the others an option to purchase the same at said valuation for a period of ninety (90) days, and that in case any one of my said sons shall desire to sell his interest in said stock, the other shall be given the privilege to purchase the same in equal amounts, except that I hereby will and direct my executors and trustees hereinafter named to convey to one of themselves enough stock of said Company to enable the holder thereof to qualify as a Director of said Merrell Soule Company.

ARTICLE FOURTEENTH. I further will and direct that in case it shall seem advisable to each and every one of my said three executors and trustees hereinafter named to dispose of said stock, they shall have the privilege of so doing, provided, however, that all three of them shall agree as to the advisability of such sale.

The three sons were named executors and trustees. Oliver Edward Merrell is still living. Mary A. Merrell, the testator's widow, died on November 11, 1911, and the trustees then distributed practically all of the property in the estate except the 2,625 shares of Merrell-Soule Co. stock. The grandchildren were paid in accordance with the will.

The three sons, as executors, trustees, and individuals, entered into an agreement on December 20, 1919, wherein they agreed to sell to each of themselves, as individuals, at $100 per share, one third of the total shares which they held as executors and trustees. The agreement recited that they had determined that it was advisable to dispose of the 2,625 shares of Merrell-Soule Co. stock. It further provided:

* * * said shares of stock having been offered pursuant to Article Thirteenth of said will and testament, to said Irving S. Merrell, Lewis C. Merrell and Oliver E. Merrell, and they have each determined to purchase at par and acquire one-third of the said shares of stock constituting said trust estate as authorized by Article Thirteenth of said will and testament.

The transfer agent for the stock refused to make the transfers called for by this agreement, whereupon Lewis C. Merrell instituted suit against the transfer agent, naming as codefendants the corporation and all of the other parties in interest, to compel the transfer agent to deliver to him a proper certificate for his part of the stock. The court gave judgment for the plaintiff and held that the sale of the stock as provided in the contract of December 20, 1919, was valid and binding. The transfer agent thereafter issued the certificates in accordance with the contract and the decision of the court. The executors and trustees under the will of Irving S. Merrell filed their final account and were then discharged. The parties have stipulated that the fair market value of the Merrell-Soule Co. common stock was $333.91 per share on March 1, 1913, and $800 per share on December 20, 1919.

The father made a specific bequest of 875 shares of the Merrell-Soule Co. stock to the petitioner, to take effect in possession at the death of Oliver and subject to the contingency that the property might be sold before that time under article fourteenth of the will. If the property had not been sold and if it had been distributed to the petitioner at the death of Oliver, the petitioner would have acquired the property by specific bequest, and the basis of the property for gain or loss in his hands would have been the fair market

value of the property on March 1, 1913, since that was greater than its value at the death of the decedent. Sec. 113 (b), Revenue Act of 1928. Thus, if the petitioner had acquired the 875 shares in that way, his basis would have been $333.91 per share. But the petitioner did not acquire the 875 shares in that way. They were not distributed to him as a part of his father's estate in accordance with his father's will. They could not have been distributed to him in accordance with his father's will prior to the death of his brother Oliver. The brothers, in order to acquire title to the property prior to the death of Oliver, had to make a sale of the property under article fourteenth of the will. The court having jurisdiction over the matter of the contract determined that that contract was a valid and binding one and resulted in a valid and binding sale of the shares. Thus the petitioner acquired his title to these particular shares by purchase in 1919 and not as a distribution of property bequeathed to him under his father's will. Section 113 (b) has no application, since the property is not such as is described in section 113 (a)(5). The general rule of section 113 (a) applies and fixes as the basis the cost of the property. The Commissioner has determined the deficiency on this basis and has allowed, as the cost, $100 per share. The petitioner has not shown by evidence nor has he demonstrated by argument that he is entitled to use any greater basis.

*Decision will be entered for the respondent.*