IRVING S. MERRELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70103. Promulgated February 20, 1936.

*Robert J. Heberle, Esq.*, for the petitioner.
*O. W. Swecker, Esq.*, for the respondent.

ARUNDELL: On November 29, 1935, a division report in this proceeding was promulgated and is reported at 33 B. T. A. 625. Thereafter by orders of the Chairman the division report was reviewed by the Board and the decision entered was vacated.

The proceeding involves a deficiency in income tax for 1930 in the amount of $5,099.83. It was submitted on a stipulation of facts, without appearances.

The petition alleges error in the respondent's determination of "excessive profit attributed to sales of Borden stock." It appears that in the taxable year the petitioner sold 1,000.16 shares of Borden Co. stock for $67,045.05 and reported a profit thereon of $3,244.84, using as a basis the sum of $63,800.21. The respondent used as a basis a "cost" figure of $24,126.70. The 1,000.16 shares sold in 1930 are part of a larger number of shares of Borden stock issued to the petitioner in 1928 in exchange for all his stock, preferred and common, of the Merrell-Soule Co., in a reorganization effected by the Borden Co. The parties appear to be agreed that the basis applicable to the Merrell-Soule Co. shares is to be allocated proportionately to the Borden shares. At least there is no issue on this.

The parties have stipulated that they "are in agreement concerning the cost to the petitioner of all of said common and preferred shares of the Merrell-Soule Company, *except* 875 common shares which the petitioner acquired from the Estate of his father." They further stipulate that "the question here concerns the cost to the petitioner of said common and preferred stock of the Merrell-Soule Company." Viewed broadly, we take this to mean that the question in issue is the proper basis to be used in determining the profit on the sale of the Borden stock in 1930.

The 875 shares in question were acquired by the petitioner from the estate of his father. The father, G. Lewis Merrell, died testate on January 7, 1909. He owned at that time 2,625 shares of the common stock of the Merrell-Soule Co. Each share had a par value of $100. He placed his residuary estate, including these shares, in trust. The trustees were to pay $5,000 annually to his wife, Mary A. Merrell, during her lifetime. Each grandchild of the decedent was to receive $3,000 from the trustees when he reached his majority. The remainder of the income was to be divided equally among the testator's three sons, Irving S. Merrell, Lewis C. Merrell, and Oliver Edward Merrell. The principal of the fund, except the Merrell-

Soule Co. stock, was to be divided equally among the three sons upon the death of the testator's wife. The Merrell-Soule Co. stock was to be held by the trustees during the lifetime of Oliver Edward Merrell and the income therefrom was to be equally divided among the three sons. The stock was to be divided into three equal parts upon the death of Oliver Edward Merrell and each son or his estate was to have one part. The thirteenth and fourteenth articles of the will were as follows:

ARTICLE THIRTEENTH. I further will and direct that none of my said sons shall in any manner sell or dispose of any of said stock or any interest therein unless he shall have first offered it to both or either of the others of my said three sons at a price not to exceed the par value thereof, and given to each of the others an option to purchase the same at said valuation for a period of ninety (90) days, and that in case any one of my said sons shall desire to sell his interest in said stock, the other shall be given the privilege to purchase the same in equal amounts, except that I hereby will and direct my executors and trustees hereinafter named to convey to one of themselves enough stock of said Company to enable the holder thereof to qualify as a Director of said Merrell-Soule Company.

ARTICLE FOURTEENTH. I further will and direct that in case it shall seem advisable to each and every one of my said three executors and trustees hereinafter named to dispose of said stock, they shall have the privilege of so doing, provided, however, that all three of them shall agree as to the advisability of such sale.

The three sons were named executors and trustees. Oliver Edward Merrell is still living. Mary A. Merrell, the testator's widow, died on November 11, 1911, and the trustees then distributed practically all of the property in the estate except the 2,625 shares of Merrell-Soule Co. stock. The grandchildren were paid in accordance with the will.

The three sons, as executors, trustees, and individuals, entered into an agreement on December 20, 1919, wherein they agreed to sell to each of themselves, as individuals, at $100 per share, one third of the total shares which they held as executors and trustees. The agreement recited that they had determined that it was advisable to dispose of the 2,625 shares of Merrell-Soule Co. stock. It further provided:

* * * said shares of stock having been offered pursuant to Article Thirteenth of said will and testament, to said Irving S. Merrell, Lewis C. Merrell and Oliver E. Merrell, and they have each determined to purchase at par and acquire one-third of the said shares of stock constituting said trust estate as authorized by Article Thirteenth of said will and testament.

Each of the sons delivered to themselves as executors and trustees his individual demand promissory note for $87,500. The transfer agent for the stock refused to make the transfers called for by this agreement, whereupon Lewis C. Merrell instituted suit against the

transfer agent, naming as codefendants the corporation and all of the other parties in interest, to compel the transfer agent to deliver to him a proper certificate for his part of the stock. The court gave judgment for the plaintiff and held that the sale of stock as provided in the contract of December 20, 1919, was valid and binding. The transfer agent thereafter issued the certificates in accordance with the contract and the decision of the court. The executors and trustees under the will of G. Lewis Merrell filed their final account in December 1927, and were discharged in April 1928. The three $87,500 notes were among the assets distributed to the three sons on their final accounting. The parties have stipulated that the fair market value of the Merrell-Soule Co. common stock was $333.91 per share on March 1, 1913, and $800 per share on December 20, 1919.

The father made a specific bequest of 875 shares of the Merrell-Soule Co. stock to the petitioner, to take effect in possession at the death of Oliver and subject to the contingency that the property might be sold before that time under articles thirteenth or fourteenth of the will. If the property had not been sold and if it had been distributed to the petitioner at the death of Oliver, the petitioner would have acquired the property by specific bequest, and the basis of the property for gain or loss in his hands would have been the fair market value of the property on March 1, 1913, since that was greater than its value at the death of the decedent. Sec. 113 (b), Revenue Act of 1928. Thus, if the petitioner had acquired the 875 shares in that way, his basis would have been $333.91 per share; the petitioner agrees with this view.

The respondent treated the acquisition as one by purchase at December 20, 1919, and the petitioner in his brief agrees that he acquired the shares at that date. Assuming this view of the parties to be correct, the basis to the petitioner would be cost. Sec. 113 (a), Revenue Act of 1928. The money price that petitioner agreed to pay was $100 per share and that figure is taken by the respondent to represent the entire cost and the basis. The petitioner, citing a number of Board and court cases, contends for a basis of $800 per share. His theory is that under the decided cases the money cost is not the entire cost to him, but that, considering the intent of the parties and their relationship, the correct basis is market value at the time of acquisition. See *Robinson* v. *Commissioner*, 59 Fed. (2d) 1008; *G. Wildy Gibbs*, 28 B. T. A. 18; *E. D. Knight*, 28 B. T. A. 188. At first glance, the cited cases lend support to the petitioner's contention. Typical of the cases is that of *Robinson* v. *Commissioner, supra*, in which an employee of a corporation was permitted to acquire stock of the corporation at less than its market value. The court said:

In each such case we think that the obvious intent of the parties, and their relationship as affecting intent, are the controlling considerations. * * * Whether regarded as a gift or as compensation, it is evident that the surplus value, over and above the actual price paid for the shares, must be taken into consideration in determining the capital base, and that such base is to be fixed at the true or market value at the time the stock was acquired.

However, the *Robinson* case and the others cited did not have the complication of title being derived through a will effective prior to March 1, 1913. There was no occasion in those cases to consider the effect of March 1, 1913, value on the base, and so as far as the present proceeding is concerned, those cases stand only for the proposition that basis is not necessarily confined to money cost.

No argument or citation is needed to establish that the so-called sale of December 20, 1919, was not an arms' length transaction. Stock worth $800 per share is not "sold" for one eighth of the value. Nor is any argument necessary to show that the shares were acquired through the will of petitioner's father who died January 7, 1909. As we read the agreement of December 20, 1919, between petitioner and his brothers, and the approval thereof by the local courts, it purported to be in accordance with the provisions of the will and not in contravention of them. The substance of the will was to bequeath to petitioner and each of his two brothers an equal interest in the Merrell-Soule Co. stock. The father attempted to discourage the sale of the stock by his sons, but he also recognized that a time might come when it would be desirable for them to sell, and so he provided in his will that they might sell if all three agreed, or if one alone desired to sell he must first offer his interest in the stock to his brothers at par before selling elsewhere.

As pointed out above, the transaction effected by the brothers in 1919 was not a genuine sale. Not only was the stated consideration inadequate, but no actual payment was made, the notes given being returned in the final distribution of the estate. The effect of the transaction was to enable each son to acquire individually the shares bequeathed to him by his father prior to the time he would have obtained them in ordinary course. So viewed, the substance of the transaction was a distribution of the stock from the trust to the beneficiaries. The value of the shares held in trust on March 1, 1913, has been agreed to as $331.91 per share, and in our opinion that value is the proper basis for determining gain or loss to the beneficiaries.

There is an additional reason why we think the March 1, 1913, value is the proper basis. Under the laws of New York there is a merger of legal and equitable estates where the trustees and beneficiaries are the same persons, L. 1909, ch. 52, § 92; and where a trust is merely passive, as here, legal title vests in the beneficiaries,

*id.* § 93. In *Greene* v. *Greene*, 125 N. Y. 506; 26 N. E. 739, the testator nominated three of his sons trustees of the residue of his estate to hold for a period of time and then distribute it to them equally. In a suit brought by a fourth son attacking this disposition of the estate, the court said:

* * * To the constitution of every express trust there are essential these elements, namely, a trustee, an estate devised to him, and a beneficiary. The trustee and the beneficiary must be distinct personalities, or otherwise there could be no trust, and the merger of interests in the same person would effect a legal estate in him of the same duration as the beneficial interest designed. 1 Rev. St. p. 727, §§ 47, 55; *Woodward* v. *James*, 115 N. Y. 346, 22 N. E. Rep. 150. That the legal and the beneficial estates can exist and be maintained separately in the same person is an inconceivable proposition. It is quite as much of an impossibility, legally considered, as it is physically. These three sons would have the actual possession of the land; they would be entitled to receive and to retain and enjoy the rents and profits; and they and their heirs would be subjected to no change of title or possession, nor other diminution of interest than what might be produced by an application of income, or of any proceeds of sales, to the payment of legacies. The result is that they have every estate and interest in possession, in remainder, and in reversion; or, in other words, the whole fee of the property. It was the design of the legislature, in the revision of the statute of uses, to abolish technical and useless distinctions between the title and the use, and to convert the estate of a beneficiary into a legal estate, commensurate with the beneficial interest intended, whenever the trust was of a passive or formal character, and the actual possession and fruits of possession were the beneficiary's. Under section 47 of the article upon uses and trusts, if a person, by virtue of a devise, shall be entitled to the actual possession of lands, and the receipt of the rents and profits thereof, in law or in equity, he shall be deemed to have a legal estate of the same quality and duration, and subject to the same conditions, as his beneficial interest.

The above cited sections and case relate to real property, but the same rules apply to personal property. See L. 1909, ch. 45, § 11; *In re Farmer's Will*, 99 Misc. 437; 163 N. Y. S. 1089; *In re Scott's Will*, 204 N. Y. S. 478, 486. Consequently, it would appear that the petitioner acquired full right to his portion of the shares of stock at the death of his father in 1909, or not later than 1911 when the testator's widow died and there was no longer any annuity charge upon the estate, and, upon acquisition at either of those dates, the March 1, 1913, value became the basis.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

Leech dissents.

Murdock, dissenting: I expressed my views on the proper disposition of this case in the report promulgated at 33 B. T. A. 625, and I need not repeat what appears there. The prevailing opinion is

based upon the thought that the petitioner did not acquire the property by a "genuine sale" but, on the contrary, acquired it by a distribution under the will of his father. Yet there was no distribution of the shares and a sale actually took place and was recognized and approved by the court. The Commissioner determined that the stock was acquired by purchase on December 20, 1919, and the petitioner in his brief agrees that he acquired the shares on that date. The sale may not be disregarded in order to grant the petitioner the use of a larger basis than the statute itself allows under the circumstances. Cf. *Hugh M. Matheson*, 31 B. T. A. 493. If he had paid the full fair market value for the stock, he would be entitled to use the purchase price as his basis for subsequent gain or loss upon the shares. Yet the reasoning of the prevailing opinion would apply just as appropriately to that situation and would require the use of the March 1, 1913, value.

The value of the shares on March 1, 1913, is immaterial to the determination of gain in this case under the statute. The petitioner on that date had but a contingent future undivided one-third interest in the 2,625 shares which would come into possession only upon the death of Oliver, then of unstated age. The value of the petitioner's interest at that time was wholly speculative, has not been proven, and was certainly different from the value of one third of the shares on that date. Those shares were then in a trust. The petitioner does not contend that there was no trust. The trustees and the beneficiaries were not the same persons. The parties and the court regarded this particular trust as an existing trust. There seems to have been good reason for its continuance. Why then should the Board hold that there was no trust after the death of the mother?

The petitioner was able to acquire these shares from the trustees at a cost of $100 each. The trustees were not in position to make and did not make any gift to the petitioner. Cf. *Robinson v. Commissioner*, 59 Fed. (2d) 1008. The petitioner had no right to use the shares prior to the purchase. Cf. *Bradley W. Palmer*, 32 B. T. A. 550. Therefore, unless this is such an extraordinary case as to warrant an exception to the use of the normal basis of cost and to justify the use of the greater value of the shares at the time of the purchase, my original opinion was correct. But in no event can I understand how the statute justifies the use, under the circumstances here present, of the value of the shares on March 1, 1913, as the petitioner's basis for subsequent gain or loss upon the disposition of the shares.

STERNHAGEN, SMITH, MORRIS, and MELLOTT agree with this dissent.