**COMMISSIONER OF INTERNAL REVENUE v. BRINCKERHOFF et al.**

**COMMISSIONER OF INTERNAL REVENUE v. STEPHAN et al.**

**COMMISSIONER OF INTERNAL REVENUE v. DAVIDS.**

**COMMISSIONER OF INTERNAL REVENUE v. CLARY.**

Nos. 197–200, Dockets Nos. 20821–20824.

Circuit Court of Appeals, Second Circuit.

June 3, 1948.

Theron Lamar Caudle, Asst. Atty. Gen. and Sewall Key, George A. Stinson, and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue, petitioner.

Stanley H. Hemley, of Jamaica, N. Y., for respondents.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The taxpayers, John H. Brinckerhoff, C. Eleanor B. Stephan, Beatrice Clary Davids, and George B. Clary, were named as beneficiaries under Article Sixth of the will of their aunt, Laura E. Anderson, who died May 14, 1921, a resident of Jamaica, New York. At the time of her death Laura E. Anderson owned property known as 365 and 365a Fulton Street, Jamaica, which

then had a fair market value of $66,207.24. Article Sixth provided:

"The property known as 365 and 365a Fulton Street, Jamaica, New York, is to be sold when in the judgment of my executors such sale shall be advisable. The proceeds of which will be divided as follows: To the Jamaica Hospital of Jamaica, New York, the sum of Five thousand dollars, the interest of said sum to be applied to the general use of said Jamaica Hospital of Jamaica, New York. To the Dutch Reform Church of America of Jamaica, New York, the sum of Two thousand dollars. The balance of the proceeds of such sale is to be divided among the following heirs: Charlotte Eleanor Brinckerhoff and John Henry Brinckerhoff children of my brother Starr Brinckerhoff, George B. Clary and Beatrice Edwards Clary children of my sister Irene B. Clary Haines share and share alike. In the event of the death of either of the children of my brother, Starr, the survivor shall take the share of the one so dying. In the event of the death of either of the children of my sister Irene, the survivor shall take the share of the one so dying."

In addition, the will also contained specific devises of realty to other designated persons as well as certain bequests of personal property. The Seventeenth Article provided as follows:

"Seventeenth. I nominate and appoint my brother Starr Brinckerhoff and my husband Frank Bernard Anderson to be the Executors of this my last Will and Testament and I do hereby authorize and empower my said executors to sell all or any part of my said real estate and give good and sufficient deeds and conveyance for the same, or to lease all or part thereof as in their judgment shall seem best and proper, and I also direct that my executors shall not be required to give bonds for the favored performance of their duties."

The executors qualified under the will on June 8, 1921, and held the property until April 6, 1928, when they conveyed it to Brinclar Realty Corporation which thereupon issued to each taxpayer 250 shares of its capital stock. Each accepted the shares in lieu of his share of the proceeds of a sale of the property, and in consideration of the receipt each released the executors from liability to pay him a share of such proceeds, as provided in the will.

On April 6, 1928, the fair market value of the property was $135,092.70, and the value of the 250 shares of the corporation was one-fourth of the property's value, or $33,773.17. The executors filed an income tax return for 1928, but made no reference in it to their conveyance to the corporation. The property was held by the corporation until the corporation was dissolved on June 30, 1941, and it was then conveyed as a liquidating distribution to the four taxpayers. "The total proceeds of the liquidation * * * amounted to" $135,092.70, of which each taxpayer received "by way of a one-fourth (¼) share in said real property" $33,773.17.

Taxpayers reported no gain from the liquidating distribution. The Commissioner determined a long-term capital gain of $71,864.78 by subtracting from the liquidation "proceeds" of $135,092.70 a figure of $63,227.92 representing the property's value at the testatrix' death, less depreciation. Taking 50 percent of the gain, or $35,932.39, as taxable, he added one-fourth thereof, or $8,983.10, to the income of each taxpayer with the explanation:

"Under Section 113(a) (5) of the Internal Revenue Code [26 U.S.C.A.Int.Rev.Code, § 113(a) (5)] the value of the stock in Brinclar Realty Corporation exchanged by you for its assets upon dissolution of the corporation is the value of the property itself on the date of the death of the testatrix."

The foregoing facts are as found by the Tax Court and stipulated by the parties. The Tax Court held that the basis of the shares exchanged in the liquidation of the corporation was not the value of the realty at the date of the testatrix' death in 1921 as claimed by the Commissioner, but was the value of the taxpayers' rights as legatees to the proceeds of a sale of the property in 1928 when they released the executors from these claims as legatees and obtained the shares in lieu of any cash that they might have derived had the land then been sold by the executors. Since there was no evi-

dence of the ultimate disposition of the two charitable bequests mentioned in Article Sixth of the will, totalling $7,000, also to be satisfied from the proceeds of a sale of this realty, the Tax Court determined that the value of the claims to the proceeds surrendered by the four taxpayers, which it held to be the basis for the stock received by them, was $7,000 less than the fair market value of the property at that time. It accordingly assessed a tax upon a $7,000 capital gain realized in the liquidation. This tax is not questioned by the taxpayers, and the item of $7,000 is mentioned merely to state the reason given by the Tax Court for determining any tax deficiency in this case.

We can see no essential difference between the facts in the case at bar and those in Anderson v. Wilson, 289 U.S. 20, 53 S. Ct. 417, 419, 77 L.Ed. 1004. There, as here, executors were directed to sell real estate and divide the proceeds among designated legatees. The Supreme Court in an opinion by Mr. Justice Cardozo construing the will and interpreting the law of New York held that a loss on the realty was a loss of the estate for tax purposes, which could not be deducted by the beneficiary in his personal tax return. The court stated:

"* * * Under the law of New York what passed to these executors was the title to the fee. By the will of this testator all his property, real and personal (with exceptions not now material), was to be converted into money. The five sons and daughters among whom the money was to be divided had no interest in the land, aside from a right in equity to compel the performance of the trust. * * * What was given to them was the money forthcoming from a sale. * * * Their inter-est in the corpus was that and nothing more.

"* * * What was bequeathed was an interest in a fund to be made up when the trustees were of opinion that it would be advisable to sell. This alone was given, and this has been received. There has been no loss by the taxpayer of anything that belonged to him before the hour of the sale, for nothing was ever his until the sale had been made and the fund thereby created. A shrinkage of values between the creation of the power of sale and its discretionary exercise is a loss to the trust, which may be allowable as a deduction upon a return by the trustees. It is not a loss to a legatee who has received his legacy in full."

■■ In the case at bar, the language of Article Sixth of the will creates a mandatory power of sale in the executors. They are trustees for the purpose of exercising that power and distributing the proceeds, first in specific amounts to two charities, and the balance to the four taxpayers. An indication of further trust duties appears in Article Seventeenth whereby the executors are given power to lease property and presumably to collect any income. Here, as in Anderson v. Wilson, supra, under the New York law the executors alone had the legal title to the land described in Article Sixth and the taxpayers' only rights were in the proceeds of a sale and to compel performance of the trust in that respect.[1]

■ It is argued on behalf of the Commissioner that the transfer of the realty to the corporation and the shares of stock to the legatees was a tax-free transaction and that the legatees took their shares by bequest under the will. Section 112(b) (5) of the Revenue Code, 26 U.S.

---

[1] Salisbury v. Slade, 160 N.Y. 278, 54 N.E. 741; Delafield v. Barlow, 107 N.Y. 535, 14 N.E. 498; Section 96, New York Real Property Law: Consol.Laws, c. 50.

"§ 96. Purposes for which express trusts may be created

"An express trust may be created for one or more of the following purposes:

* * * * * *

"2. To sell, mortgage or lease real property for the benefit of annuitants or other legatees, * * *"

Section 100, New York Real Property Law:

"§ 100. Trustee of express trust to have whole estate

"Except as otherwise prescribed in this chapter, an express trust, valid as such in its creation, shall vest in the trustee the legal estate, subject only to the execution of the trust, and the beneficiary shall not take any legal estate or interest in the property, but may enforce the performance of the trust."

C.A.Int.Rev.Code § 112(b) (5), which is substantially the same as the corresponding section of the Revenue Act of 1928, provides that no gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock of that corporation, and immediately after the exchange such person or persons are in control of the corporation; in such case the basis of the property acquired is the same as that exchanged, by Section 113(a) (6) of the Code, 26 U.S.C.A.Int.Rev.Code, § 113(a) (6). We agree with the determination of the Tax Court that though the shares were directly issued to the legatees, the substance of the transaction was the same as if they had been first issued to the executors who in turn transferred them to the legatees, for the executors achieved the same dominion over the shares and achieved the same result as though they had taken two steps instead of one.

A transfer of property by the executors to the corporation accompanied as it was by a theoretical receipt by the executors of the stock of the corporation which they then owned or controlled was a tax-free transaction under the provisions of Section 112(b) (5) of the Code. A tax liability however arose against the executors when the stock was transferred to the taxpayers in exchange for a release of their claims as legatee-beneficiaries to the cash proceeds which the executors would have realized had they instead exercised the mandatory power of sale given them under the will. We have heretofore held that the use by the executor of property of the estate to satisfy a legatee's claim for a cash payment is a taxable transaction in which gain or loss of the estate is to be recognized to the extent of the difference between the estate's basis and the value of the cash liability satisfied. Kenan v. Commissioner of Internal Revenue, 2 Cir., 114 F.2d 217; Suisman v. Eaton, D.C., D.Conn., 15 F.Supp. 113, affirmed Suisman v. Hartford-Connecticut Trust Co., 2 Cir., 83 F.2d 1019, certiorari denied Id., 299 U.S. 573, 57 S.Ct. 37, 81 L.Ed. 422; Cf. Commissioner of Internal Revenue v. Matheson, 5 Cir., 82 F.2d 380. Thus the basis of the shares of stock which the taxpayers received is not the value of the realty at the time of the death of the testatrix but the value of their claim to the proceeds of a sale which they exchanged for the stock.

It is argued that the three decisions we have cited immediately above do not apply because they involved only cash legacies of fixed amounts and the executor in such cases had control of the general estate which fluctuated in value in his hands while the legatee was unaffected in the amount of his recovery by the fluctuations. But the facts here involve no legal distinction since the taxpayers had no interest in the real estate during the period of its increase in value but only in such cash as they might receive from the exercise of the executors' power of sale. The real estate itself belonged to the executors in trust who retained the title until it was disposed of through the stock transactions we have described. The present case is therefore to be distinguished not from other legacies which are of a fixed amount in cash but from gifts under a will of property which belongs as such to the legatee. The fact that the ultimate value realized by the taxpayers in the present case depends upon the fluctuating value of the property devised to the executors does not affect our conclusion; this aspect was definitely present and indeed was discussed by Mr. Justice Cardozo in Anderson v. Wilson, 289 U.S. 20, 27, 53 S.Ct. 417, 77 L.Ed. 1004. There, as here, a trust estate intervened before the beneficiaries could realize anything so that the estate and not the beneficiaries was held to be affected for tax purposes by any increase or decrease in the value of the property before its final disposition. That the property in the case at bar was not sold for cash but was exchanged for the legatees' claims to the proceeds is not significant, as we have already shown.

The Commissioner contends that the taxpayers took the shares of stock by bequest or inheritance because there was a compromise of their claims under the will through the substitution of the shares of stock for the cash proceeds to which they were entitled; he cites decisions holding that an heir who receives by a compromise more than his share of the estate under the will does not realize taxable income because

he takes the excess due to his status as an heir. We think these decisions are irrelevant to the determination of the question of basis in the present case where stock of the same amount as the legatees' cash claims under the will was given in satisfaction of them.

For the foregoing reasons the orders of the Tax Court are affirmed.