**Constance F. WILSON, Appellant,**

v.

**Laurie W. TOMLINSON, District Director of Internal Revenue, Appellee.**

**No. 19267.**

United States Court of Appeals
Fifth Circuit.

July 19, 1962.

David Emanuel and Forrest & Emanuel, Miami, Fla., for appellant, Constance F. Wilson.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., Miami, Fla., Benjamin M. Parker, Atty., I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., Lavinia L. Redd, Asst. U. S. Atty., for appellee.

Before CAMERON and JONES, Circuit Judges, and DeVANE, District Judge.

DeVANE, District Judge.

This appeal is from a final summary judgment entered by a Judge of the United States District Court for the Southern District of Florida on August 15, 1961. This final summary judgment dismissed the complaint of appellant with prejudice and entered judgment for the appellee and ordered that costs be taxed against appellant.

Hereafter, in this opinion appellant will be referred to as Mrs. Wilson and appellee as District Director.

The facts in the case are not in dispute. They were stipulated upon a record joined

in by both parties. The salient facts bearing upon the issue involved may be summarized briefly as follows:

L. B. Wilson, deceased, who was the husband of Mrs. Wilson, on June 28, 1948, executed a contract to leave to his wife upon his death one-third of his net estate, less her share of taxes and debts, and on the same date he made an irrevocable will carrying into effect the provisions of this contract. This will dealt with only that part of his estate which he had by said separate agreement agreed to will to his wife and disposed of no other part of his estate.

On September 23, 1953, the said L. B. Wilson executed another will, declaring it to be his last will and testament, in which he attempted to revoke all prior wills theretofore made by him. In this will he left to his wife a share in his estate and made disposition of a substantial part of the remainder of his estate to others. In this will he named Mrs. Wilson, George A. Smathers, and the Miami Beach First National Bank as executors.

On October 28, 1954, Mr. Wilson died and the executors filed his last will and testament with the County Judge, who promptly accepted and approved the same, and the executors proceeded with the administration of the estate.

Shortly thereafter, it appeared to Mrs. Wilson that the rights she secured by the separate agreement of June 28, 1948, and the irrevocable will executed by her husband carrying out the provisions of said agreement might be affected by the will of September 23, 1953. Whereupon, Mrs. Wilson filed the first will for probate and filed suit to establish her rights under each of said wills. She sought by this suit to establish her rights under her separate agreement with her husband made in 1948 and under the irrevocable will executed by him at the same time the separate agreement was executed. Her position and contention was opposed by those interested under the provisions of the second will.

This resulted in the parties entering into a settlement agreement on May 24, 1956, fixing and determining the rights of Mrs. Wilson under each of these wills. This agreement provided that Mrs. Wilson would receive, among other specific property enumerated therein, the sum of $1,100,000.00 in cash from the estate of her deceased husband. The agreement further provided that the other parties to the agreement might elect to satisfy the $1,100,000.00 either by paying the same to her in cash, or in lieu thereof entirely or in part with shares of the common stock of L. B. Wilson Company, Inc. Mrs. Wilson had no choice in the selection of the method by which she was to be paid, and the agreement specifically provided that should the other persons interested decide to pay her in shares of common stock of L. B. Wilson Company, Inc., that said stock was to be accepted by her at the fair market value as of that time and not the fair market value that had already been placed on the stock as of the date of the death of Mr. Wilson.

The agreement meticulously spelled out how the present fair market value of this stock was to be determined. The value placed upon the stock in the estate as of the date of the death of Mr. Wilson had previously been determined to be the sum of $2,000.00 per share and the fair market value of the stock determined as specified in the agreement as of the date it was transferred to Mrs. Wilson was fixed at $2,942.19 per share. This value called for the delivery to Mrs. Wilson of 371 shares of the common capital stock of L. B. Wilson Company, Inc.

The agreement further provided that should Mrs. Wilson so elect that she would have the right, exercisable at any time after four weeks from the date the Court approved the settlement agreement, to cause the L. B. Wilson Company, Inc., to redeem said stock at the price she paid for it. She so elected and the stock was sold by her to the L. B. Wilson Company, Inc., for $1,100,000.00, the exact amount she was to receive in cash from the estate of L. B. Wilson.

The District Director ruled that despite the provisions of the settlement agreement, Mrs. Wilson, for tax purposes, was

limited to the estate value of the stock ($2,000.00 per share) when she received it and that the difference between that amount and the $2,942.19 per share she received when she sold the stock back to the estate was taxable income to her as a realized gain. This suit involves primarily the question as to whether this ruling of the District Director is correct.

Upon the filing of the stipulated record in the case, Mrs. Wilson filed a motion for summary judgment and the District Director filed a cross motion for summary judgment. As no issue of fact was involved, the case was heard and disposed of by the Court upon these motions, and as pointed out above, the Court found in favor of the District Director and denied any relief to Mrs. Wilson.

In the final summary judgment the District Judge held as follows:

"The Court has given consideration to the authorities cited and to the arguments of counsel, and has reached the conclusion that Lyeth v. Hoey, 305 U.S. 188 [59 S.Ct. 155, 83 L.Ed. 119], is controlling and that defendant is entitled to judgment as a matter of law. The language of Section 1014, Internal Revenue Code of 1954, and Section 1.1014–4, Treasury Regulations, together with the applicable cases, would appear to support no other conclusion. The cases relied upon by plaintiff, and particularly Commissioner [of Internal Revenue] v. Matheson, [5 Cir.,] 82 F.2d 380, Commissioner [of Internal Revenue] v. Mesta, [3 Cir.,] 123 F.2d 986, Commissioner [of Internal Revenue] v. Brinckerhoff, [2 Cir.,] 168 F.2d 436, and Kenan v. Commissioner, [2 Cir.,] 114 F.2d 217, involve factual situations which are materially different from the present case, and, in the opinion of the Court, these cases are not controlling."

This Court finds and holds that the District Judge was in error in holding that Lyeth v. Hoey, supra, controlled and we find and hold that the law of the case is with Mrs. Wilson.

Lyeth v. Hoey, supra, relied upon by the District Judge was a case where the Collector of Internal Revenue attempted to impose a tax on property received by an heir under an agreement compromising and settling a contest of the decedent's will and the Court merely held that the property thus acquired was exempt from Federal income tax under the provisions of Section 22(b) (3) of the Internal Revenue Act of 1932, 26 U.S.C.A. § 22(b) (3). In that case the decedent, while willing to her children token gifts, left most of her property to the Longyear Foundation primarily for the purpose of creating a trust to preserve the records of the early life of Mary Baker Eddy. When the will was offered for probate, her heirs objected to its probate on the grounds, among others, of lack of testamentary capacity and undue influence. Before the case came on for trial, a compromise settlement was made between the heirs and the Longyear Foundation by which the heirs were to receive a certain percentage of the entire estate and the Foundation the remainder.

The Supreme Court's holding that the portion of the estate received by the heirs was acquired by "inheritance" is the only conclusion that could have been reached in that case, because otherwise the heirs had no standing in Court. It is clearly not controlling of the issues involved in this case.

While neither party cites, nor does the Court find, any decision involving facts precisely as they exist in this case, the Court is of the opinion that the following cases fully support the decision the Court has reached in this case: Suisman v. Eaton, Collector, D.C., 15 F.Supp. 113, affirmed Suisman v. Hartford-Connecticut Trust Co., 2 Cir., 83 F.2d 1019, cert. den. 299 U.S. 621, 57 S.Ct. 115, 81 L.Ed. 458; Commissioner of Internal Revenue v. Matheson, 5 Cir., 82 F.2d 380; Kenan, Jr. v. Commissioner of Internal Revenue, 2 Cir., 114 F.2d 217; Commissioner of Internal Revenue v. Binckerhoff, and three companion cases, 2 Cir., 168 F.2d 436.

We do not have before us and do not decide in this case whether excess profits, if any, realized from the transfer of the stock to Mrs. Wilson is taxable against the estate. The only question we have to decide is whether, when Mrs. Wilson transferred the stock back to the estate, she realized any excess profit as a result of this transaction. Under the settlement agreement, Mrs. Wilson was required to accept the stock at its present day market value as determined in accordance with the provisions of the agreement in settlement of her $1,100,000.00 claim against the estate, and when she transferred it back to the estate, she received exactly the same amount. We hold, therefore, that the excess profits tax levied against her was illegal and void.

The judgment of the District Court is reversed and the case is remanded to that Court with directions to enter a judgment in favor of Mrs. Wilson for the full amount of her claim.

Reversed and remanded.