Lawrence Sternkopf v. Commissioner. Eugene Sternkopf v. Commissioner.
Sternkopf v. Commissioner
Docket Nos. 20234, 20235.
United States Tax Court
1950 Tax Ct. Memo LEXIS 246; 9 T.C.M. (CCH) 201; T.C.M. (RIA) 50062; March 16, 1950
*246 Max Perl, Esq., 175 Fifth Ave., New York 10, N. Y., for the petitioners. Michael Waris, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: These consolidated proceedings involve deficiencies in income tax for the year 1945 determined against petitioners Lawrence and Eugene Sternkopf, respectively, in the amounts of $4,808.98 and $4,854.94 and penalties of $787.20 and $820.78. Some of the items, as well as deficiencies and penalties for 1944 in the respective amounts of $829.53 and $829.53, and $139.44 and $139.44, having been otherwise disposed of, the sole issue is whether the partnership business conducted by petitioners entitled to have included in its cost of goods sold the excess over O.P.A. price ceilings paid by it for merchandise in the year 1945. All of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found. The stipulation is as follows: 1. Lawrence Sternkopf and Eugene Sternkopf are brothers who were engaged in the retail butcher business during 1945 as partners under the firm name and style of Sternkopf Bros. 2. The petitioners keep their accounts upon an accrual basis using *247 the calendar year. 3. The principal supplier of meats for the Sternkopf Bros. retail stores during 1945 was the wholesale dealer Herman Wolosky of 163 Fort Greene Place, Brooklyn, New York. 4. The total payments to Wolosky for meats purchased by Sternkopf Bros. for the year 1945 amounted to $52,698.83, of which $30,675.99 represented the ceiling price fixed by the Office of Price Administration (hereinafter referred to as O.P.A.) and $22,022.84 of which represented payments in excess of the O.P.A. ceiling prices in effect at the time of the purchases. 5. The petitioners sold the meat above described during 1945 and the income from those sales is the subject of the controversy herein. 6. The Commissioner in computing the petitioner's income for 1945 and in determining the deficiencies for that year, did not recognize the excess over O.P.A. ceiling prices as part of the cost of goods sold. 7. It is hereby stipulated and agreed that the Commissioner erred in increasing partnership sales in the amount of $5,097.31 and each of the petitioner's distributive share of the partnership income in one-half of that amount for the taxable year 1945. 8. It is hereby stipulated and agreed *248 that each of the petitioners is liable for the 10 per cent penalty under Section 294 (d) (1) (A) of the Internal Revenue Code based upon the tax liability for 1945 of each as shall be determined by the Court in this proceeding. 9. It is further stipulated and agreed that in the case of each petitioner there are no deficiencies in Federal income tax and penalties for the taxable year 1944. Opinion Respondent makes no effort to distinguish these facts from the situation in Lela Sullenger, 11 T.C. 1076, petition for review dismissed (C.A., 5th Cir.), - Fed. (2d) - (Feb. 20, 1950). He asserts only that the result there reached was incorrect since his present contention was not made or considered in that case, and that we should now reconsider the question and arrive at the opposite conclusion. He implies that he there advanced only the argument that the difference between O.P.A. ceilings and prices actually paid should be considered deductions and that such deductions must be disallowed as contrary to public policy; and that the Tax Court rejected the contention on the ground that the items were not deductions. An examination of the Sullenger *249 opinion, however, reveals that the difference between the two positions is even narrower than that. His argument is there stated to be (p. 1077) "that the amounts paid in excess of the O.P.A. prices were 'not truly a part of cost of goods sold' but were 'in realty nothing but a "bribe" to the various packing firms or amounts paid to them illegally to induce them to sell the goods to petitioner at the ceiling prices.' He then argues that the amounts must be considered from the standpoint of deductions * * *." It thus appears that the contention that over-ceiling prices are not properly a part of the cost of goods sold was advanced and considered in the Sullenger case. All that is now altered is respondent's present insistence that the difference represents what he describes as an "intangible" paid in order to obtain a "competitive advantage." The distinction is thus confined to the difference between an elimination from cost of goods sold as a bribe on the one hand, and as a payment for a competitive advantage on the other. So stated, respondent's position appears to have been stronger in the original case than in the present one. If the latter were accepted, it would mean that *250 in any situation where a limited market or other extraneous circumstance forced buyers to pay more than fair market value, cf. John J. Felin & Co. v. United States, 334 U.S. 624, in order to preempt merchandise from a competitor, the result would be an elimination of the differential as cost of goods sold. Whatever merit there may have been in the original contention that the payment of a bribe would be reprehensible and hence an inadmissible component of cost would thus disappear under the present argument. The nature of this distinction even more forcibly emphasizes the inapplicability of the cases pressed upon us by respondent. They are such as Donald McDonald, Administration, 28 B.T.A. 64, where we pointed out that "Adverse interests can be relied upon to fix a proper cost for tax purposes, but where, as here, the interests of the parties [father and children] are not adverse, the terms agreed upon may require closer scrutiny"; and New Hampshire Fire Insurance Co., 2 T.C. 708, affirmed (C.C.A., 1st Cir.), 146 Fed. (2d) 697, where we said: "Prices in excess of market paid for personal reasons are not the correct measure of *251 cost." This is clearly not a comparable situation. Respondent's present complaint is that petitioners engaged in the practices described for business and not personal reasons and precisely because they anticipated a greater, if more unconscionable, profit from their business operations. If respondent's present position is in fact significantly distinguishable from that taken in the Sullenger case and if we are at liberty to consider the question anew, a point we find it unnecessary to decide, the specific issue raised is thus governed not by the principle applied in the cited cases but by such precedents as Hugh M. Matheson, 31 B.T.A. 493, where while the Board did "not know what the petitioner's motives were for paying $130,700 for securities having a fair market value of only $111,200, when acquired, there is nothing in the record to indicate other than that the entire situation represented the actual purchase price of the stock alone and that no part thereof represented a gift or special favor * * *"; and the outcome was that "The statute provides for the basis of 'cost.' The securities here cost $130,700. We find no justification for a different basis * * *." See *252 also Jefferson Planting & Manufacturing Co., Ltd. v. Commissioner (C.C.A., 5th Cir.), 31 Fed. (2d) 753. On authority of Lela Sullenger, supra, the deficiencies must be disapproved. Decision will be entered under Rule 50.