Hugh M. Matheson, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 71353.   Promulgated October 31, 1934.

*Douglas D. Felix, Esq.*, for the petitioner.
*C. C. Holmes, Esq.*, for the respondent.

OPINION.

Morris: The respondent having determined a deficiency in income tax of $7,524.82 for the calendar year 1930, the petitioner brings this proceeding for the redetermination thereof, alleging error in such determination by reason of the use of an aggregate of $111,200 as the "cost" basis for the computation of gain or loss upon sale thereof; his ruling that the purchase and sale of said stocks did not constitute a transaction entered into for profit; that certain items were not deductible as bad debts; and his failure to permit the deduction of the sum of $8,000 representing the cost of 68 shares of capital stock of the City National Bank, Miami, Florida, in the computation of net taxable income.

The petitioner, an individual, is a resident of Miami, Florida.

William J. Matheson died on May 15, 1930, leaving an estate which was inventoried as of that date at approximately $24,000,000, and which estate included, among other assets, the shares of corporate stock hereinafter mentioned.

As of May 15, 1930, Hugh M. Matheson, petitioner herein, was given a credit on the books of said estate of $500,000, the same being

the sum bequeathed to him by the third bequest in the will of his father, the said William J. Matheson, in the following language: "THIRD: I give and bequeath to my son, HUGH M. MATHESON, the sum of Five Hundred thousand Dollars."

On August 27, 1930, certain stocks were transferred by the executors of the estate to Hugh M. Matheson, at an agreed price of $497,-400, and the sum of $497,400 was then charged on that date against the credit mentioned in the above paragraph and this credit was also charged with $2,600, which was paid to Hugh M. Matheson in cash, which transaction was recorded on the books of the estate.

Among the stocks transferred to petitioner as aforesaid were:

| | |
|---|---|
| 200 shares, Allied Chemical & Dye at $310 per share | $62,000 |
| 200 shares, New Jersey Zinc at $78 per share | 15,600 |
| 300 shares, Westinghouse Electric at $117 per share | 53,100 |
| Total | 130,700 |

The market value of the 700 shares of stock above listed was $130,700 on May 15, 1930, and $111,200 on August 27, 1930.

The estate was solvent and therefore financially able on August 27, 1930, to have paid Hugh M. Matheson the $500,000 bequest and the legality of said bequest has never been questioned by the respondent.

On December 26, 1930, the said Hugh M. Matheson sold the—

| | |
|---|---|
| 200 shares Allied Chemical & Dye stock for | $36,842 |
| 200 shares New Jersey Zinc stock for | 9,168 |
| 300 shares Westinghouse Electric stock for | 27,309 |
| Total | 73,319 |

In his income tax return for the calendar year 1930, petitioner deducted the difference between the above mentioned sums of $130,700 and $73,319, or the sum of $57,381, as a loss in the year 1930 from the sale of said stock. The respondent disallowed $19,500 of the loss so deducted, and a portion of the deficiency, which is the subject of this proceeding, resulted from the disallowance.

The estate of William J. Matheson, deceased, had a net income for its taxable year, which included August 27, 1930, of $618,773.93, and said estate did not report any profit received or loss sustained from the transfer of said stock from it on August 27, 1930, to Hugh M. Matheson.

The petitioner is entitled to deduct as a bad debt for the calendar year 1930 the sum of $1,840 on account of the indebtedness of A. E. Ozanne, otherwise known as Bert Ozanne, but the petitioner is not entitled to deduct for said year the balance claimed as bad debts, to wit: The sum of $8,802.33, which is alleged in the petition in the

above entitled appeal to be owing petitioner by Sidney Wilbur, William Little, and William Koch.

The petitioner is entitled to deduct as a loss sustained in the calendar year 1930 the sum of $8,000, same being the cost of stock owned by him in the City Natonal Bank in Miami, which stock became worthless during said calendar year.

The petitioner's counsel argues at some length in his brief that the 700 shares of stock in question were not acquired by "distribution" (see section 113 (a) (5) of the Revenue Act of 1928), under the will of the decedent, but were acquired by "purchase", and that, therefore, actual "cost" to him under section 113 (a) of said act and not the fair market value at the time of such alleged distribution should be the basis for determining gain or loss upon the sale here involved.

Notwithstanding the stipulation entered into between the parties merely refers to the respondent's disallowance of $19,500 of the $57,381 loss originally claimed by the petitioner and contended for in this proceeding, it would appear that the entire amount was in fact disallowed by him.

The respondent tacitly admits, by his argument, the deductibility of all but $19,500 of the amount claimed by the petitioner and apparently abandons all contentions that he might have originally advanced that the transaction was not one entered into for profit and that consequently no deductible loss was sustained by reason of the purchase and sale of these stocks. He now concedes that such shares were not acquired by "distribution" but were, as the petitioner contends, acquired by "purchase", but he argues that instead of the use of the actual cost to the petitioner, to wit, $130,700, the fair market value on August 27, 1930, the date of purchase, to wit, $111,200, should be used. His argument seems not to be predicated upon the fact that there was a statutory "distribution" on August 27, 1930, but rather that he paid $130,700 for stocks—said figure being the fair market value thereof at the date of the death of the decedent—which had a fair market value of only $111,200 when purchased, or $19,500 less than the actual purchase price.

The simple issue seems to be, therefore, whether the actual purchase price to the petitioner—he having agreed to purchase the stocks from the estate at a fair market value of $19,500 greater than the actual fair market value on the date of acquisition—or the actual fair market value on such date, should be used as the "cost" basis for the determination of gain or loss.

Section 113 (a) of the Revenue Act of 1928 provides that:

The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property * * *.

The facts show that the petitioner was bequeathed the cash sum of $500,000 in the decedent's will; that he received a credit upon the books of the estate for the amount of his legacy on May 15, 1930; and that the estate, being entirely solvent, he, as the respondent appears to concede, received a constructive distribution of his cash legacy at or about that time. On August 27, 1930, the stocks in question having shrunk in value from $130,700 on May 15, 1930, to $111,200, the petitioner agreed to purchase and, as the respondent concedes, " purchased " such stocks from the estate and actually paid the sum of $130,700 therefor.

The facts here are quite different from those in *Donald McDonald, Jr., Administrator*, 28 B. T. A. 64, where the taxpayer acquired stock from his daughter-in-law, paying more therefor than the stock was worth at the time of purchase in order to aid her in her financial difficulties and, we believe, justify a different ruling. While we do not know what the petitioner's motives were for paying $130,700 for securities having a fair market value of only $111,200, when acquired, there is nothing in the record to indicate other than that the entire consideration represented the actual purchase price of the stock alone and that no part thereof represented a gift or special favor as in *Donald McDonald, supra*. It is reasonably inferable, though this is pure conjecture, that these securities may have been set aside at or about the time of the decedent's death in anticipation of the purchase thereof by the petitioner, when the fair market value thereof was $130,700, and that, therefore, because of his fiduciary relationship he felt constrained to pay such amount therefor, notwithstanding a shrinkage had taken place between that time and the date of physical acquisition on August 27, 1930. However, it being conceded that the actual cost was $130,700, and there being not the slightest trace of *mala fides* or other circumstances which would tend to defeat the purpose of the taxing statutes, his motives for the payment of a sum greater than the fair market value become unimportant.

The statute provides for the basis of " cost." The securities here cost $130,700. We find no justification for a different basis and we therefore disapprove the respondent's determination.

Proper effect shall be given in the redetermination hereunder to the stipulated adjustments settling the only other issues raised by the pleadings.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

McMahon dissents.

BLACK, dissenting: I am not convinced that there is sufficient distinction in the facts in the instant case to justify a different result from that reached in *Donald McDonald, Jr., Administrator*, 28 B. T. A. 64, distinguished in the majority opinion.

In the *McDonald* case the Board, after discussing Congressional intent with reference to the provisions of law allowing deductions for losses, said:

\* \* \* However that may be, we think that they did not intend to allow a deduction for that part of the loss which resulted in this case from paying more than a fair price for the stock. The excess cost was paid for personal reasons, which would not have been paid otherwise, and cannot be the basis of a loss.

Petitioner, at the hearing in the instant case, did not advance any reason as to why he paid $130,700 for stocks which were transferred to him on August 27, 1930, and which on that date admittedly had a fair market value of only $111,200. The latter part of the majority opinion states that petitioner made no explanation of the reasons which prompted him to pay more for the stock than it was worth. The majority opinion states we must be left to inference as to why this was.

If we are to be left to inferences, are we not justified in reaching the same conclusion as in the *McDonald* case, where it is said, " The excess cash was paid for personal reasons which would not have been paid otherwise and cannot be the basis of a loss ". It seems to me that it was the business of the petitioner to explain why he paid $19,500 more for these stocks than their fair market value on the day they were transferred to him.

There is another angle from which I think this transaction may be properly viewed and which furnishes a logical explanation, and that is this: The $500,000 in cash bequeathed to petitioner in his father's will, not being required to be paid out of any particular fund, was a general bequest and not a specific bequest. Cf. *Harry G. Haskell*, 30 B. T. A. 855. The executor determined to pay this general bequest in stocks rather than in cash, except as to the $2,600 paid in cash.

If my construction of the transaction in this respect is correct, then unquestionably the basis for loss as provided in section 113 (a) (5), Revenue Act of 1928, is the fair market value of the stocks at the date of distribution, to wit, $111,200. I cannot agree that the basis for gain or loss on these stocks is $130,700, their fair market value at the date of the death of decedent. This would be true if the stocks had been bequeathed to petitioner by specific bequest, but is not true where they come to him under a general bequest. See section 113 (a) (5), Revenue Act of 1928.

MURDOCK agrees with this dissent.