## COMMISSIONER OF INTERNAL REVE-
## NUE v. MATHESON.
### No. 7809.

Circuit Court of Appeals, Fifth Circuit.
Feb. 27, 1936.

J. P. Jackson, Sp. Asst. to the Atty. Gen., Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Harry Marselli, Sp. Assts. to the Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue, and Clay C. Holmes, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Douglas D. Felix, of Miami, Fla., and Elliott W. Smith, of New York City, for respondent.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

The sole question is whether the Board of Tax Appeals erred in point of law in holding on stipulated facts that the taxpayer, Hugh M. Matheson, was entitled to measure his loss in selling certain shares of stock during the year 1930 by putting their cost at the price agreed on when he received them on account of a money legacy in his father's will, rather than at their lesser market value on that date. The stipulated facts are, in brief, that the taxpayer's father died May 15, 1930, leaving an estate of about $24,000,000, and including the stocks in question. His will gave each of his three children, the taxpayer being one, a legacy of $500,000, followed by numerous money legacies to other persons and to charities, and the residue of his estate was given to his executors in trust to convert it into money and pay the proceeds in equal shares to the three children or their descendants. The taxpayer was one of the two executors. The estate was amply sufficient to pay all debts and legacies. Accordingly, as of date May 15, 1930, the taxpayer was given a credit of $500,000 for his legacy on the books of the

estate. "On Aug. 27, 1930, certain stocks were transferred by the executors of the said estate to the said Hugh M. Matheson at an agreed price of $497,400, and the said sum of $497,400 was charged on that date against the credit mentioned above and said credit was also charged with $2,600 which was paid to the said Hugh M. Matheson in cash." The stocks here in question were among the stocks so transferred; the credit agreed on for them being $130,700. That was their market value on May 15, 1930, when the testator died, but the market value was only $111,200 on August 27, 1930. The estate for the year 1930 had a net income of $618,773, but neither profit nor loss was returned by it from this transaction with taxpayer.

■ The relevant provisions of the Revenue Act of 1928, § 113 (26 U.S.C.A. § 113 note), are: "The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except * * * (5) If personal property was acquired by specific bequest * * * the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer." The three quoted exceptions all relate to estates of decedents, and we first consider whether either applies to this case. This stock was acquired by the decedent's estate from the decedent, and in the income tax return of the estate the basis for determining gain or loss on a sale by it would be the market value of the stock at decedent's death May 15, 1930; that is, $130,700. Hartley, Executor, v. Commissioner, 295 U.S. 216, 55 S.Ct. 756, 79 L.Ed. 1399. If the transaction of transfer to this taxpayer was a sale at a price of $130,700, as the Board held, there was neither gain nor loss to the estate; so the failure to return either for the estate has no tendency to prove that there was no sale. That circumstance may therefore be put aside.

■ It is perfectly clear that the taxpayer did not acquire this stock by specific bequest under the first above-quoted exception. The legacy on account of which he took it was a legacy of $500,000 in money. It had been assented to and passed to his credit as money. Nothing stood in the way of his withdrawing the whole or any part of the money at any time or for any purpose.

■ Lastly, he did not acquire this stock either by will or by intestacy as a distribution to him. By possibility the three children of the testator might have agreed to set aside the terms of the will which affected them and to distribute this and other stock in kind instead of letting the executors reduce it all to money and pay out money as the will provides; but no such thing appears. The stipulation is express that the taxpayer's legacy of cash was assented to, and that later "at an agreed price" of $130,700 he took over this stock, together with other stock also at an agreed price, and $2,600 in cash, all in full payment of the legacy credit.

■ This is, as the Board found, an acquisition of the stock by purchase, and its cost, the agreed price of $130,700, is the basis for measuring his loss when months later he sold the stock for a less price. It is argued that he would not have bought at that price, well above the market value, from any one else, and there must have been some personal motive or other consideration beside the stock. But the facts are stipulated, and they include nothing of that sort. As a residuary legatee, he would recoup only one-third of any excess in price which he might pay, and, since his brother and sister were equally made rich by the will, there is no room to think that he was making a gift of the other two-thirds to them. It may be that the brother and sister also bought property on a like basis, or that the taxpayer paid the price he did feeling that as executor he should have disposed of these stocks before their price fell, or he may have thought their intrinsic worth to him to be greater than the market value. The Board was not at liberty, without evidence, to suppose any consideration other than the credit on the legacy as stipulated. Much less may we do so in the teeth of the finding of the Board.

The petition for review is denied.