The bill of complaint seeks specific performance of an alleged oral agreement to support the complainant for the rest of his life and also asks for the return of 133 shares of Boonton National Bank stock transferred by the complainant to the defendant. *Page 141 
The complainant was 80 years old when the transaction took place. He was in poor health, a diabetic. He owned about 11 acres of land in Boonton on which was situated a large hostelry known as the "Pudding Stone Inn" and a small six room cottage.
The complaint alleges that without preliminary negotiations, the defendant, a son-in-law of complainant, on February 10th, 1942, took complainant to the law offices of Beam Kelley, in Boonton, and there urged him over his feeble objections, to execute a deed for his real estate above mentioned and a bill of sale for all his personal property including the bank stock. Complainant does not question the transfer of the real estate to the defendant. He affirms that transaction. However, he insists that he did not intend to transfer the bank stock although he executed a statement which included the transfer of said stock to the defendant.
The defendant claims that the transaction between him and the complainant was in all respects fair and equitable; that the bank stock was included in the transaction; that the complainant was besieged by creditors and in debt in an amount in excess of $26,000; that the defendant assumed payment of these obligations and paid them after the transaction was effectuated.
The complainant invokes the rule of "adequate, independent advice" and contends that he did not have the benefit of such advice at the time of or prior to the consummation of the transaction between the parties. See Oswald v. Seidler,136 N.J. Eq. 443, 446. I do not believe the rule above referred to is applicable in this case. I have been unable to find a case in which the rule of "adequate, independent advice" applies unless there also exists a confidential relationship between the parties or a relationship in which dominion was exercised by one person over the other. Wolf v. Palisades Trust and Guaranty Co.,121 N.J. Eq. 385, 389. In the pending case, there is no proof that a confidential relationship or a relationship of dominion by one party and subordination by the other existed. The parties to the transaction always dealt with each other at arms length. In fact, the complainant's brief concedes that this was so in the following *Page 142 
language: "Relations between the complainant and the defendant have always been on the basis of business rather than friendship."
The test of mental incapacity was not met by the complainant in this case. It was shown that the complainant was a sick person, a diabetic, when the transaction took place. It was not established, however, that he did not comprehend or was mentally incapable of understanding in a reasonable manner the nature and effect of the act in which he was engaged. Soper v. Cisco,85 N.J. Eq. 165, 169; McCambridge v. Daly, 109 N.J. Eq. 43, 45.
To infer mental incapacity from the mere establishment that the complainant was the victim of diabetes would be illogical.
The complainant was not illiterate. He signed the statement which included the transfer of the bank stock to the defendant. From the written execution of the statement flows the presumption that the party signing it, read, understood and assented thereto. This presumption may be rebutted by showing that fraud or imposition was practiced upon the party who signed it. Mannion
v. Hudson and Manhattan Railroad Co., 125 N.J. Law 606, 607;
affirmed, 127 N.J. Law 230; Rawlins v. Trevethan, 139 N.J. Eq. 226,228. However, no fraud or imposition has been proved in this case. At the time the statement was executed complainant spent over an hour at the office of a competent lawyer, now deceased, whose selection had theretofore been agreed upon by both parties. Presumably, complainant had the benefit of his advice. The defendant was not present at this time and, therefore, could not urge the complainant to effectuate the transaction as alleged.
The price paid was fair and reasonable. The evidence shows that prior to the sale to the defendant, the complainant made several attempts to sell the realty through brokers in Montclair, the Oranges, and Morristown without avail. The inn was greatly in need of repairs and was being operated at a financial loss. No one in complainant's immediate family was willing to assist him. All had advised him to sell the inn in order that he might be relieved of responsibilities. Ralph Vincent, the son of complainant, testified that he discussed *Page 143 
the advisability of selling the inn and bank stock to the defendant prior to the time of the sale and that he advised his father to sell the inn at any price, "for the reason that I felt that he would lose it and all that went with it in a reasonably short time if he did not. And maybe more than that. I think it would have been injurious to his health also." The defendant, a man of means, came to the aid of complainant only after all sources of relief were exhausted and agreed to assume all his debts in return for a deed for the real property and the transfer of the bank stock. After the sale, the defendant expended $18,000 in improvements on the inn and surrounding grounds. This amount, added to the defendant's initial outlay, amounted to $44,000. Defendant subsequently sold the inn for $30,000 and the cottage for $4,500. There remained two or three acres of vacant land from which the defendant must realize the balance of his expenditures. Even assuming that the value of the bank stock, as alleged by complainant, was $5,000, I am convinced that the price paid was equitable and fair.
Other than the mere statements of the complainant and the denial thereof by the defendant that the defendant agreed to support complainant for the rest of his life, there is no evidence in this case establishing such an agreement. On the whole showing made at the hearing, I am not satisfied that there was an agreement by the defendant to support the complainant.
I will advise a decree accordingly. *Page 144