THE SCOTTISH BANK, A CORPORATION, ADMINISTRATOR OF EMILY P. BEN-
    NETT, DECEASED, PLAINTIFF, v. MARY BENNETT ATKINSON AND HUS-
    BAND, JOHN D. ATKINSON, AND ELEANOR BENNETT BENNETT AND
    HUSBAND, JOHN R. BENNETT, AND MRS. AVIS F. NELSON, DEFENDANTS.

MARY BENNETT ATKINSON AND HUSBAND, JOHN D. ATKINSON, PETI-
    TIONERS, v. ELEANOR BENNETT BENNETT AND HUSBAND, JOHN R.
    BENNETT, RESPONDENTS.

(Filed 27 February, 1957.)

**1. Corporations § 13b: Gifts § 1—**

The delivery by the owner of certificates of stock, duly endorsed, to the
donees or their agent is sufficient delivery to constitute a valid gift, both
as to certificates issued prior to 15 March 1941 (C.S. 1164), and as to cer-
tificates issued thereafter (G.S. 55-81), and this notwithstanding any agree-
ment between the corporation and its affiliate that it would not transfer
any stock on its books unless the new owners were approved by the affiliate,
since C.S. 1170 applies only between the corporation and the transferee.

**2. Evidence § 32—**

The husband of the donee of a gift may testify as to directions given
and declarations made by the donor to the donee, since the testimony is not
in behalf of the husband or in behalf of a party succeeding to his interest,
nor as to a transaction or communication between him and the deceased,
the testimony being as to a transaction between donor and donee. G.S.
8-51.

APPEAL by Mary B. Atkinson and husband from *Carr, J.*, June Civil
Term 1956 of ROBESON.

These consolidated cases were here in the spring of 1955. The deci-
sion on the questions then presented is reported 242 N.C. 456, 88 S.E.
2d 76, which is referred to for a statement of the facts on which that
appeal was based. When the case was again in the Superior Court it
was re-referred. The referee, having taken additional testimony, made
findings of fact and conclusions of law. Mrs. Atkinson and husband
(hereinafter designated as appellants) excepted to evidence offered by
appellees Bennett. They also excepted to the findings and conclusions
of law. The exceptions were heard by Judge Carr. He sustained some
of appellants' exceptions, overruled others, made findings of fact him-
self, and thereupon rendered judgment. Appellants Atkinson noted
exceptions to the rulings made by Judge Carr and appealed. The ad-
ministrator did not appeal. A statement of such additional facts as
may be necessary for an understanding of the decision appears in the
opinion.

*Ingram P. Hedgpeth and Varser, McIntyre & Henry for appellants. Nance, Barrington & Collier and McLean & Stacy for appellees.*

RODMAN, J. We held, when this litigation was here before, that equalization of advancements could only be effected from property owned by Mrs. Emily P. Bennett at the time of her death. The evidence taken by the referee was for the purpose of ascertaining what property, if any, was so owned. The case depends on the ownership of 140 shares of stock in Avant-Sholar, Inc.

Judge Carr found as a fact: "On 31 October 1949, Mrs. Emily P. Bennett signed the transfer on the certificates of stock then owned by her and registered in her name on the books of the corporation, representing 140 shares of the capital stock of Avant-Sholar, Inc., which transfer contained the names of Eleanor Bennett Bennett and Mary Bennett, as now appears on said certificates of stock offered in evidence. After signing such transfer, the said Emily P. Bennett delivered said certificates of stock to her daughter, Eleanor Bennett Bennett."

Judge Carr further found that the stock certificates were, on 31 October 1949, delivered by John R. Bennett to the secretary-treasurer of Avant-Sholar, Inc., for cancellation and issuance of a new certificate to the tranferees. The new certificate was not actually issued until 24 February 1950. Notwithstanding the new certificate was not so issued until 1950, Avant-Sholar, Inc., on 31 October 1949, recognized the change of stock ownership and paid a dividend to the new owners on 12 December 1949.

Appellants except to the findings that Mrs. Emily Bennett delivered the stock certificates to the transferees, contending that the only evidence tending to establish that fact is the testimony of John R. Bennett, who, they say, is prohibited by statute from testifying. Appellants also assert that transfer on the books of the corporation was necessary to vest title to the stock in the transferees.

Ralph Sholar, secretary-treasurer of Avant-Sholar, Inc., testified that the stock certificates were delivered to him by John R. Bennett on 31 October 1949 and, when delivered, the certificates bore the signature of Mrs. Emily P. Bennett. He knew her signature. The names of the transferees appeared in the certificates when Bennett requested cancellation of the old certificates and issuance of a new certificate. Avant-Sholar, Inc., was sales agent for Chevrolet automobiles and had agreed with General Motors it would not transfer on its books any stock unless the new owners were approved by General Motors. Witness wrote General Motors 31 October 1949 asking its approval of transferees as stock owners. He did not receive a reply until February 1950 and then issued a new certificate for 140 shares to Eleanor Bennett and

Mary Bennett. December 1949 the corporation declared a dividend. This dividend was paid to Mrs. Atkinson and Mrs. Eleanor Bennett.

Emily P. Bennett executed a deed dated 28 October 1949 acknowledged by her 31 October 1949 by which she conveyed to her daughters Mary and Eleanor several tracts of land. Immediately following the description of the lands is this language: "Also a one-half interest to said Eleanor Frances Bennett and a one-half interest to the said Mary E. Bennett in and to all of the personal property and mixed property of every nature, description and kind, including automobile, household and kitchen furnishings, stocks, bonds, notes and money which the said party of the first part owns or in which she has an interest."

Mrs. Atkinson alleged in the petition which she filed in Columbus County asking for partition that she and her sister Eleanor owned as tenants in common all of the property, real and personal, including stocks and bonds owned by their mother, Emily, on 28 October 1949.

Delivery of the certificate for corporate stock is essential to a valid gift. This was true at common law and is now expressly provided for by statute, G.S. 55-81.

Possession by the endorsee or his agent of stock certificates duly endorsed by the person to whom the certificates were issued suffices to establish *prima facie* the fact of delivery and that the transferee in possession has good title to the stock represented by the certificates. *Castelloe v. Jenkins,* 186 N.C. 166, 119 S.E. 202; *Vann v. Edwards,* 128 N.C. 425, 39 S.E. 66; *Vinson v. Knight,* 137 N.C. 408, 49 S.E. 891.

The 140 shares were represented by seven certificates. Five of these were issued prior to 15 March 1941, the effective date of the Uniform Stock Transfer Act, G.S. 55-103. C.S. 1164, providing "The shares of stock in a corporation are personal property, and are transferable on the books of the corporation in the manner and under the regulations provided by the by-laws," did not prevent the transferee from acquiring title to the stock upon endorsement and delivery, notwithstanding any provision of the corporation's by-laws. The last paragraph of G.S. 55-81 states the construction which had been given to C.S. 1164. *Castelloe v. Jenkins, supra; Cox v. Dowd,* 133 N.C. 537; *Grissom v. Sternberger,* 10 F. 2d 764. The endorsement and delivery of the stock certificates terminated Mrs. Emily P. Bennett's claim to all 140 shares notwithstanding the provisions of the contract between Avant-Sholar, Inc., and General Motors. C.S. 1170 applies only between the corporation and transferee.

Appellants insist that if there is competent evidence to support the findings of fact, the findings disclose that they were predicated on the testimony of John R. Bennett, that he is not competent to testify, and that the case should be remanded for findings based only on competent evidence.

John R. Bennett testified he was present and heard Mrs. Emily Bennett direct her daughter Eleanor, wife of the witness, to type in the names of the transferees of the stock certificates, and when the typing was completed, Emily Bennett signed the certificates. Her signature was witnessed, whereupon Mrs. Emily Bennett handed the certificates to her daughter Eleanor, stating as she handed over the certificates: "Now, I am a pauper." He further testified that after the certificates were delivered to Eleanor Bennett she gave the certificates and the deed which Mrs. Bennett had signed to the witness with instructions to file the deed for record and to take the stock to Mr. Sholar. Appellants excepted to this testimony, contending it violates the provisions of G.S. 8-51.

The conditions necessary to seal the lips of a witness under this statute were summarized in *Bunn v. Todd,* 107 N.C. 266, and restated in *Peek v. Shook,* 233 N.C. 259, 63 S.E. 2d 542. Using the yardstick given in *Peek v. Shook,* it is apparent that two of the requisites there given do not apply to the testimony of the witness Bennett. He was not testifying in his own behalf or in behalf of a party succeeding to his interest. *Vannoy v. Green,* 206 N.C. 80, 173 S.E. 275; *Burton v. Styers,* 210 N.C. 230, 186 S.E. 248. The fact that he was the husband of Eleanor, one of the transferees, did not disqualify him. *Allen v. Allen,* 213 N.C. 264, 195 S.E. 801. He was not testifying to a personal transaction or communication with the deceased. The communication and transaction to which he testified was between Emily Bennett and her daughter Eleanor Bennett. He was not prohibited from testifying to that transaction. *Johnson v. Cameron,* 136 N.C. 243; *Zollicoffer v. Zollicoffer,* 168 N.C. 326, 84 S.E. 349; *Vannoy v. Green, supra.*

The form of the questions cannot be held as prejudicial error. Judge Carr, in making his findings, excluded all objectionable portions of the questions and considered them only as directing the attention of the witness to a time or event.

After careful consideration of all of the assignments of error we find nothing which would justify a new trial. The judgment is

Affirmed.