DORIS J. FESMIRE, PLAINTIFF, v. FIRST UNION NATIONAL BANK OF NORTH CAROLINA, EXECUTOR OF JESSE BURNS EARLE, DECEASED, DEFENDANT.

(Filed 16 June, 1966.)

**1. Gifts § 1—**

The burden is on the party claiming a gift *inter vivos* to show the intent of the donor to give her the gift so as to divest himself immediately of all right, title and control therein; and the delivery, actual or constructive, to the donee.

**2. Corporations § 17—**

Delivery of a stock certificate endorsed in blank is constructive delivery of the shares which it represents, and possession of such certificate establishes *prima facie* the fact of delivery.

**3. Gifts § 1—**

The fact that the donor, after a completed gift *inter vivos*, retains physical access to the gift, or obtains possession solely for the purpose of safekeeping for the benefit of the donee, does not defeat the gift.

**4. Same—**

Evidence tending to show that intestate endorsed the certificate for certain shares of stock in blank and delivered it to plaintiff, that plaintiff put the certificate in an envelope with another chose, admittedly hers, and placed the envelope in intestate's safe deposit box to which she had the key, with testimony of intestate's brother that intestate stated he had given the stock to plaintiff, *held* sufficient to establish a gift *inter vivos*, entitling plaintiff to possession of the certificate against intestate's personal representative.

**5. Same—**

In this action to establish a gift *inter vivos* as against the personal representative of the alleged donor, it was competent for plaintiff to introduce in evidence the inventory, made by an officer of the bank, of the donor's safe deposit box in order to show that the certificate of stock claimed as the gift had been endorsed in blank by intestate and had been physically separated from other unendorsed certificates by being enclosed in an envelope on which was typed the name of plaintiff and in which another document of value, admitted to be her property, was also enclosed.

**6. Evidence § 11—**

In an action to establish a gift *inter vivos* of a certificate for shares of stock endorsed in blank and found after donor's death in his safe deposit box, it is competent for plaintiff to testify that she had access to the safe deposit box at the time the endorsed stock certificate came into her hands, and that for a long period prior to donor's death she had been keeping her own valuable papers in the safe deposit box, the testimony not being of a personal transaction between plaintiff and decedent but being testimony concerning independent facts. G.S. 8-51.

MOORE, J., not sitting.

APPEAL by defendant from *Bone, E.J.,* September 1965 Session of CHATHAM.

The plaintiff sues to recover the possession of Certificate No. D2342 for 500 shares of stock in the First Union National Bank of North Carolina. She alleges the certificate was originally issued by the corporation to Dr. Jesse Burns Earle, now deceased, that he made an *inter vivos* gift of the stock to her. The gift is denied by the defendant. The jury found for the plaintiff and from judgment in accordance with the verdict the defendant executor appeals.

The following facts are not disputed: The stock certificate was originally issued in the name of Dr. Earle and he was the owner of the shares. He rented a safety deposit box from the bank. When the box was opened after his death this stock certificate, endorsed by him in blank, was found in the box, within an envelope. On the outside of the envelope was typed "Doris J. Fesmire for Michael Fesmire." Within the envelope, in addition to this stock certificate, was a savings certificate in the name of "Michael Fesmire or Doris J. Fesmire (joint tenants)" in the amount of $300.00. Mrs. Fesmire and Dr. Earle were engaged to be married on 13 July 1964. He died 3 April 1964. For many years prior to his death, Mrs. Fesmire was employed by Dr. Earle as secretary in the office wherein he carried on the practice of medicine. Two keys to the safety deposit box were issued to Dr. Earle. Both keys were held by Mrs. Fesmire following the death of Dr. Earle and were delivered by her to the defendant executor so that the box could be opened and an inventory of its contents made. One of these keys, together with the master key retained by the bank, had to be used in order to open the box.

Upon oral argument of the appeal, counsel for the defendant stated that the bank kept no record of the persons who opened the box or the times when such openings occurred.

The brother of Dr. Earle, called as a witness for the plaintiff, testified, without objection, to a conversation with the deceased in which the deceased told him that he "had given" 500 shares of his stock in the First Union National Bank of North Carolina to Mrs. Fesmire and that the stock was kept for her in his safety deposit box in the bank, to which box Mrs. Fesmire had a key.

The plaintiff introduced in evidence, over objection, the inventory of the contents of the safety deposit box made after the death of Dr. Earle and the testimony of the vice-president of the defendant, who made the inventory, to the effect that the box contained many other stock certificates issued to Dr. Earle, including numerous certificates for other shares of stock in the First Union National Bank, none of them being endorsed by him. None of these other cer-

tificates was in the envelope above mentioned. The box also contained a life insurance certificate which was the property of Dr. Earle's brother and some savings bonds belonging to Dr. Earle's three daughters.

Over objection, the plaintiff, herself, testified that she first saw this stock certificate on 13 March 1964, at which time it came into her possession; at that time she placed it in the above mentioned envelope with the savings certificate; she typed on the envelope "Doris J. Fesmire for Michael Fesmire," and placed the envelope in the desk drawer in her office; she kept the stock certificate in her possession approximately one week; she had the keys to the safety deposit box on and after 13 March 1964; for about three years prior to that date, she had been keeping her valuable papers in this safety deposit box; on 6 April 1964, following the death of Dr. Earle, she gave the keys to the box to officers of the defendant executor and was present when the box was opened for the purpose of making an inventory of its contents; when the box was so opened, it contained the envelope and within the envelope was the certificate for the stock and the savings certificate.

The defendant introduced in evidence the rental agreement between the bank and Dr. Earle concerning the safety deposit box, which provided that no person other than the renter or an authorized deputy should have access to the box, except as provided in the agreement. No such "deputy" was appointed by Dr. Earle except his former wife, now deceased. The defendant also offered in evidence the will of Dr. Earle bequeathing to his children certain tangible property and devising and bequeathing to the bank, as trustee for his children, all of the residue of his estate, the net value of which, after taxes, was approximately $242,000.

When the safety deposit box was opened, the defendant delivered the savings certificate found in the above mentioned envelope to the plaintiff, but refused her demand for the delivery of the stock certificate to her.

*Barber & Holmes for defendant appellant.*
*Moody & Moody. and T. F. Baldwin for plaintiff appellee.*

LAKE, J. The burden of proof was upon the plaintiff to show each element of the gift *inter vivos* under which she claims. *Cartwright v. Coppersmith,* 222 N.C. 573, 24 S.E. 2d 246; *Duckworth v. Orr,* 126 N.C. 674, 36 S.E. 150. These elements are: (1) The intent by Dr. Earle to give to her the shares of stock so as to divest himself immediately of all right and title to and control of the stock;

and (2) the delivery, actual or constructive, of the stock certificate endorsed by him. G.S. 55-75; *Smith v. Smith,* 255 N.C. 152, 120 S.E. 2d 575; *Scottish Bank v. Atkinson,* 245 N.C. 563, 96 S.E. 2d 837; *Buffaloe v. Barnes,* 226 N.C. 313, 38 S.E. 2d 222, *rehear. den.,* 226 N.C. 778, 39 S.E. 2d 599; *Cartwright v. Coppersmith, supra; Patterson v. Trust Co.,* 157 N.C. 13, 72 S.E. 629; *Newman v. Bost,* 122 N.C. 524, 29 S.E. 848.

Delivery of an endorsed stock certificate is constructive delivery of the shares which it represents, and possession of such certificate by the endorsee establishes *prima facie* the fact of delivery. *Scottish Bank v. Atkinson, supra.* The act relied upon to establish the delivery must be unequivocal and must deprive the donor of his right to dominion over the thing given. *Cartright v. Coppersmith, supra; Handley v. Warren,* 185 N.C. 95, 116 S.E. 168. It is not essential, however, that the article be placed beyond the physical power of the donor to retake it, as is illustrated by the case of a gift of coins to a child by dropping them in a container recognized as the property of the child though the container, itself, remains in the home of the donor and thus subject to his physical control. *Patterson v. Trust Co., supra.* Furthermore, when there has been an actual transfer of possession with the requisite intent, the gift is not defeated by the subsequent return of the article to the possession of the donor for safe keeping, or its return to a container or place of deposit owned and controlled by the donor. *Bynum v. Bank,* 221 N.C. 101, 19 S.E. 2d 121; *Swindell v. Swindell,* 153 N.C. 22, 68 S.E. 892. In the *Swindell* case, the gift of a horse by a husband to his wife was not defeated by the subsequent return of the horse to the stable or pasture of the husband and the use of it by the husband. In the *Bynum* case, the donor delivered to the donee a tin box and the keys thereto with intent to make a gift of the documents in the box, and then instructed the donee to return the box to its former resting place in the donor's closet. Again, in *Zollicoffer v. Zollicoffer,* 168 N.C. 326, 84 S.E. 349, a retaking of a stock certificate by the donor and placing it in her Bible for safe keeping did not defeat the gift of the stock.

The testimony by the brother of Dr. Earle that Dr. Earle said he "had given" 500 shares of his stock in the First Union National Bank to the plaintiff and that the stock was kept for her in his safety deposit box in the bank, to which box she had a key, is ample evidence to show a delivery of the certificate by him to her. *Zollicoffer v. Zollicoffer, supra; Gross v. Smith,* 132 N.C. 604, 42 S.E. 111. To this testimony there was no objection by the defendant and it was clearly competent.

There is no merit in the exception by the defendant to the admission in evidence of the inventory of the contents of the safety deposit box made by its officer, or in its exception to the testimony of such officer as to the contents of the box. This evidence shows conclusively that the certificate in question was endorsed by Dr. Earle, no other certificate in the box was so endorsed, and this certificate was physically separated from the remaining certificates by being enclosed in an envelope, on which was typed the name of the plaintiff, and in which was another document of value admitted to be her property.

The defendant's major contention is that there was prejudicial error in permitting the plaintiff, herself, to testify that the stock certificate came into her possession on 13 March 1964, that she then placed it in the envelope and typed upon the envelope her name, whereupon she placed the envelope in the drawer of her own desk at the office and kept it there approximately one week. The defendant also contends that there was error in permitting the plaintiff to testify that she had the keys to the box in her possession at the time the stock certificate came into her hands, and that for a long period prior to that date she had been keeping her own valuable papers in this safety deposit box. The admission of this testimony was not forbidden by G.S. 8-51 since it is not testimony by the plaintiff of a personal transaction between her and the defendant's testator. It is testimony concerning independent facts. *Lister v. Lister,* 222 N.C. 555, 24 S.E. 2d 342; *Jones v. Waldroup,* 217 N.C. 178, 7 S.E. 2d 366; *Thompson v. Onley,* 96 N.C. 9, 1 S.E. 620; Stansbury, North Carolina Evidence, § 73, Note 45. In the *Lister* case, this Court, speaking through Winborne, J., later C.J., said:

> "Where in the trial of this action plaintiff produces paper writings, in the form of negotiable notes purporting to be payable to him and to be signed by intestate of defendants, administrator and administratrix, upon which the action is based, and testifies to his possession of them since certain dates, even though such dates correspond with the purported dates of such paper writings, and identifies the purported signatures thereto to be in the handwriting of said intestate, are such paper writings admissible in evidence? Yes."

Since the admission of this testimony by the plaintiff was not error, the defendant's exception to those portions of the court's instruction to the jury summarizing and referring to this testimony are also without merit.

We have examined each of the defendant's assignments of error and find no basis therein for a new trial of this action.

No error.

MOORE, J., not sitting.