ALLEN M. EARLY AND JEANNETTE B. EARLY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 802–67.    Filed June 26, 1969.

*Leland E. Fiske,* for the petitioner.
*Roy E. Graham,* for the respondent.

Respondent argues that the receipt by petitioners of the life estate pursuant to the settlement with the estate was tantamount, under the rationale of *Lyeth* v. *Hoey*, 305 U.S. 188 (1938), to an acquisition by "gift, bequest, or inheritance," precluding amortization of its value

564

by application of section 273, I.R.C. 1954.[1] In addition, respondent obliquely questions whether Rose intended a gift to petitioners of the El Paso stock. Petitioners view the settlement as a taxable exchange of property which resulted in no gain or loss because the basis of the property transferred by petitioners should be deemed to equal the value of the life estate received, and contend that this value is properly amortizable in full over the life of the asset received without allocation to tax-exempt interest income received from the trust.

Petitioner possessed on the date of Rose's. death certificates representing 70,000 shares of El Paso stock and endorsed stock powers covering the shares naming petitioner and Jeannette-as transferees. Under the Uniform Stock Transfer Act,[2] a written assignment by separate document is a valid method of transfer, and an endorsement by the person appearing by the certificate to be the owner is effectual as against all persons except the assignor in spite of fraud, duress, mistake, revocation, death, incapacity, or lack of consideration or authority. Moreover, it has been held that possession by the endorsee or his agent of duly endorsed stock certificates establishes prima facie that the transferee has good title to the stock as against the assignor or his representative. *Scottish Bank v. Atkinson*, 245 N.C. 563, 96 S.E. 2d 837, 839 (1957) ; *In Re Hill's Estate*, 30 Ill. App. 2d 243, 174 N.E. 2d 233 (1961) ; *Vincent v. Campbell*, 140 N.J. Eq. 140, 53 A. 2d 313 (1947). See also 1 Christy, Transfer of Stock sec. 52 (3d ed. 1964).

It is clear that petitioners held the El Paso stock under a bona fide claim of title and possessed the right to transfer it to a purchaser without notice free of all claim by Rose's. Estate. *McCullen v. Hereford State Bank*, 214 F. 2d 185 (C.A. 5, 1954). At no time did the stock become part of Rose's probate estate. Certain beneficiaries and heirs of Rose threatened action against petitioners to have the stock declared an asset of the estate. In the arm's-length settlement, an interest in the estate was transferred to petitioners in order to have included in the estate the property to which petitioners held a bona fide claim of title. One valuable property right was exchanged for another. Petitioners made no claim *against the estate* as heirs or as donees of lifetime gifts from Rose (except as to the $20,000 in specific bequests). Cf.

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

SEC. 273. HOLDERS OF LIFE OR TERMINABLE INTEREST.

Amounts paid under the laws of a State, a Territory, the District of Columbia, a possession of the United States, or a foreign country as income to the holder of a life or terminable interest acquired by gift, bequest, or inheritance shall not be reduced or diminished by any deduction for shrinkage (by whatever name called) in the value of such interest due to the lapse of time.

[2] Tex. Rev. Civ. Stat. Ann. art. 1302–6.01 *et seq.* (1962), which was derived from Acts 1943, 48th Leg., p. 722, ch. 397, sec. 26. These provisions have the effect of making shares of corporate stock fully negotiable. *Snyder Motor Co. v. Universal Credit Co.*, 199 S.W. 2d 792 (Tex. Civ. App. 1947).

*White* v. *Thomas,* 116 F. 2d 147 (C.A. 5, 1940), certiorari denied 313 U.S. 581 (1941).

In *Lyeth* v. *Hoey, supra,* the Supreme Court held that property acquired by an heir under State intestacy laws in compromise of his claim, based upon an alleged invalidity of a will under which he was granted a small legacy, *against the estate* for a greater portion of *that very property* constituted "property acquired by gift, bequest, device, or inheritance." Undeniably, but for the original "gift" in the instant case, petitioners would not have been in a position to acquire the life estate. However, in our judgment this simple "but for" connection does not compel us to attribute gift characteristics to all property thereafter passing through petitioners' hands. It is plain that *Lyeth* v. *Hoey* has no application where the asset, as here, is acquired by purchase or exchange. Cf. *White* v. *Thomas, supra; Bell* v. *Harrison,* 212 F. 2d 253 (C.A. 7, 1954) ; and *William N. Fry, Jr.,* 31 T.C. 522 (1958), affd. 283 F. 2d 869 (C.A. 6, 1960). We believe that to reach the same conclusion as in *Lyeth* v. *Hoey* under the significantly different facts presented here would necessitate an unwarranted extension of the rationale of that case beyond the intent of the Supreme Court.

In *White* v. *Thomas, supra,* the rationale of *Lyeth* v. *Hoey* was not applied to a settlement in which a claim, based upon a purported inter vivos gift, against specific estate property was compromised by the transfer of estate property dissimilar in nature to that claimed. As a result, the amounts received under the settlement were held not to be "the proceeds of a gift," but income. In the instant case, technically as well as practically, the life estate in the trust comprised of various assets managed by fiduciaries was not "a part of the very thing claimed," i.e., a remainder interest in shares of stock.

In our opinion petitioners acquired their joint percentage life estates through the sale or exchange of property, and not by gift, bequest or inheritance. *Sherman Ewing,* 40 B.T.A. 912 (1939) ; *Commissioner* v. *Matheson,* 82 F. 2d 380 (C.A. 5, 1936), affirming 31 B.T.A. 493 (1934) ; *White* v. *Thomas, supra; Gist* v. *United States,* (S.D. Cal. 1968, 22 A.F.T.R. 2d 5895, 68–2 U.S.T.C. par. 9667). Accordingly, section 273 is inapplicable.

Respondent did not determine in the notice of deficiency, plead in the answer, or make any argument in the brief that the transaction, if characterized as a "sale or exchange," resulted in a gain to petitioners and, in effect, concedes that the properties exchanged should be deemed to be of equal value resulting in a "cost" to them, for purposes of amortization, of the actuarial value, as of the date of transfer, of the life estate received.[3] Petitioners properly added the $20,000 legal

---

[3] By way of settlement under the Federal gift tax provisions, respondent determined that Rose made a gift to petitioners in 1957, the value of which should be measured by the actuarial value of the life estate ultimately received by them.

fee incurred by them in the settlement proceedings to this value in determining "cost." *Pennroad Corporation*, 21 T.C. 1087 (1954); *Jones' Estate* v. *Commissioner*, 127 F. 2d 231 (C.A. 5, 1942). Thus, no issues as to gain or basis are raised herein.

It is well established that the cost of purchasing a life estate measured by the life of the grantor is amortizable over his life expectancy. *May T. Hrobon*, 41 T.C. 476, 503 (1964); *Bell* v. *Harrison, supra; William N. Fry, Jr., supra; Elmer J. Keitel*, 15 B.T.A. 903 (1929). The concept of recoupment of investment is equally operable in a case such as this where the purchased life interest is measured by the grantee's own life. We so hold.

Since petitioner's life estate constitutes property held for the production of income, its amortized cost is deductible under section 167(a)(2)[4] unless disallowed in whole or in part by section 265.[5]

A portion of the trust income paid to petitioners during the years 1964 and 1965 constituted taxable income and the remainder constituted tax-exempt interest income. Under the plain, unambiguous provisions of section 265, expenses allocable to tax-exempt *interest* income are disallowed only to the extent of amounts otherwise deductible *under section 212*. See Rev. Rul. 61–86, 1961–1 C.B. 41.

It is not disputed that the amortized cost is deductible, if at all, under section 167(a)(2). See *KIRO, Inc.*, 51 T.C. 155 (1968). Undeniably, the provisions of section 167(a)(2) are parallel to those of section 212,[6] and a logical case may be made that section 265 should have included a reference to section 167(a)(2). "However, our present problem is to interpret the Act passed, not to determine what type of an Act could have been passed." *Gellman* v. *United States*, 235 F. 2d 87, 93 (C.A. 8, 1956). "It is not our responsibility to rewrite the

---

[4] SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(2) of property held for the production of income.

[5] SEC. 265. EXPENSES AND INTEREST RELATING TO TAX-EXEMPT INCOME. No deduction shall be allowed for—

(1) EXPENSES.—Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle, or any amount otherwise allowable under section 212 (relating to expenses for production of income) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this subtitle.

[6] SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax.

statute. We must interpret it as we find it." *Mary E. Burrow Trust*, 39 T.C. 1080, 1091 (1963), affd. 333 F. 2d 66 (C.A. 10, 1964).

We are not called upon to interpret a necessarily ambiguous phrase such as "capital assets," *Corn Products Co.* v. *Commissioner*, 350 U.S. 46 (1955), or an imprecise economic concept such as "loss," *Helvering* v. *Owens*, 305 U.S. 468 (1939), which may be interpreted broadly or narrowly according to the basic congressional purpose. Therefore, we find no occasion to resort to speculation as to legislative intent.

We conclude that petitioners are entitled to a depreciation deduction during the years in issue under section 167(a)(2), unaffected by section 265, for the full amortized cost of their life interests in the estate trust.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

WITHEY, *J.*, dissenting: I respectfully dissent from the majority opinion herein on the ground that it does not appear to me the taxpayers have carried their burden of proof. In order that the taxpayers might amortize their basis in their interest in the trust estate, they must first have a basis. It is stipulated and found as fact that the stock of which they were in possession at the death of the decedent had a fair market value exceeding $2 million and that stock of that value was placed in the estate of the decedent in return for petitioners' life interest in the trust estate. Nothing else in the way of basis is found to have been used to effectuate the settlement. In my view, the question then arises, did petitioners own a property right in the stock so transferred, the value of which could be used as a basis? The evidentiary facts found seem to me to raise a serious question affecting petitioners' claim to ownership of the stock at the death of the decedent. From such facts, it is at least as fair to conclude that Allen Early in holding the stock was acting in a trust capacity for the decedent and only as an agent as it is to conclude that he held it as a gift from decedent. To my way of thinking, the first hurdle petitioners had to surmount in their proofs was a negation of any such agency and clear proof either of a gift of the stock by the decedent or their acquisition of title and equitable ownership thereof in some other fashion. The mere fact, which is relied on by the majority, that Texas law makes it possible for the holder of stock powers to transfer bare legal title to an innocent purchaser without notice can in no way, without a showing of a donative intent on the part of decedent, constitute the transfer of either legal or equitable title to the stock to the petitioners. On the facts as found, I can find no gift of the stock to them; therefore, no basis for their life interest in the trust, and it follows, nothing for them to amortize.

SCOTT, *J.*, dissenting: Any claim which petitioner had to the El Paso Natural Gas Co. stock was by way of gift. Petitioner's claim was contested and under a settlement he received a 32-percent life interest for himself and his wife in a trust. In my opinion, the property petitioner received in lieu of his claim to a gift of the stock took on the characteristics of the claim settled. Therefore, in my view petitioner's life interest in the trust was acquired by him by gift within the meaning of section 273, I.R.C. 1954.

This view is not only consistent with the settlement of Rose's gift tax liability for 1957, which petitioner agreed to as coexecutor of the estate, but might also explain why no issue was raised as to petitioner's basis for determining gain or loss on the exchange of the stock for the life income interest in the estate, if the transaction is to be treated as an exchange.

DRENNEN, RAUM, ATKINS, AND TANNENWALD, *JJ.* agree with this dissent.

---

TANNENWALD, *J.*, dissenting: It is significant that the majority carefully refrains from resting its decision on a finding that the decedent made a valid completed gift prior to her death in a transaction separate from the settlement. Indeed, even though the endorsement of the stock certificates gave Early the power to transfer good title to a bona fide purchaser, the transaction was potentially subject to rescission as between Early and the decedent's estate, since Early was not a bona fide purchaser in his own right. Compare art. 1302–6.07 with art. 1302–6.08, Tex. Rev. Civ. Stat. Ann. (1962). Rather, the majority reasons that the petitioners had *claims of full ownership* which were exchanged for life interests in a transaction which should similarly be considered independent of the original purported gift of the shares by the decedent.

Such a rationale, in my opinion, misconceives the applicability of *Lyeth* v. *Hoey*, 305 U.S. 188 (1938). In that case, the taxpayer was an heir and claimed as an heir and it was held that what was received in the compromise should be treated as having been received as an heir. The tax characterization of the property received was thus held to be determined by the status of the claimant which gave rise to the claim and the settlement.[1] *Helvering* v. *Safe Deposit Co.*, 316 U.S. 56 (1942); *In re Sage's Estate*, 122 F. 2d 480 (C.A. 3, 1941); *Estate of Mary Clare Milner*, 6 T.C. 874 (1946); 1 Mertens, Law of Federal Gift and Estate Taxation, sec. 4.19 (1959).

---

[1] The fact that *Lyeth* v. *Hoey* involved income tax has not precluded the extension of its principle to the estate and gift tax areas. Cf. *White* v. *Thomas*, 116 F. 2d 147 (C.A. 5, 1940); see *Charlotte Keller*, 41 B.T.A. 478, 484 (1940); 1 Mertens, Law of Federal Gift and Estate Taxation, sec. 4.20, fn. 93.

In the instant case, the original transfer was claimed to be a gift. Petitioners' claim stemmed from their asserted standing as donees and that standing was the basis for the financial recognition accorded to them by the settlement. To paraphrase what the Second Circuit Court of Appeals said in *Harte* v. *United States*, 252 F. 2d 259, 261 (C.A. 2, 1958), by way of explanation of *Lyeth* v. *Hoey*, what petitioners received is to be treated as if it were acquired by gift. To say, as the majority does, that their bona fide claims of ownership dispel their donee standing and convert the settlement into an independent transaction is to emasculate *Lyeth* v. *Hoey*, since every settlement within the ambit of that case necessarily involves a bona fide claim.

There is not the slightest suggestion in the record herein that the dispute between Early and the contestants of decedent's will was other than bona fide. Cf. *Housman* v. *Commissioner*, 105 F. 2d 973 (C.A. 2, 1939) ; *Bailey* v. *Ratterre*, 144 F. Supp. 449 (N.D.N.Y. 1956). Nor does this case involve a settlement under which a taxpayer receives property belonging to another party claimant rather than to the decedent. Compare *Lydia Hopkins*, 13 T.C. 952 (1949), with *Darthey I. Williams*. 36 T.C. 195 (1961).

The cases relied upon by the majority are clearly distinguishable. *Sherman Ewing*, 40 B.T.A. 912 (1939), and *Commissioner* v. *Matheson*, 82 F. 2d 380 (C.A. 5, 1936), both involved situations where there was no dispute and the taxpayer received property in discharge of a monetary legacy to which he was unquestionably entitled. *Gist* v. *United States*, an unreported case (S.D. Cal. 1968, 22 A.F.T.R. 2d 5895, 68-2 U.S.T.C. par. 9667), also did not involve any dispute; the decedent's widow exchanged her admitted community property rights for the rights which she was entitled to receive in exchange under decedent's will. In *White* v. *Thomas*, 116 F. 2d 147 (C.A. 5, 1940), the taxpayer received cash outright in lieu of his claim to real estate. In holding that the cash was not received as a gift, the Fifth Circuit Court of Appeals expressly distinguished the situation where "what is received is a part of the very thing claimed." See 116 F. 2d at 147. This distinguishing factor clearly applies herein where petitioners received interests in a trust which contained the very property they were claiming as donees. Thus, despite broader language in the Court of Appeals opinion, which seemingly supports the conclusion of the majority, that case clearly is inapplicable.[2] Moreover, the fact is that the taxpayer in *White* v. *Thomas* had no bona fide claim of a gift and the District Court held that the payment was in the nature of a settlement of litigation involving a claim for compensation by the taxpayer and an alleged interference by the taxpayer with the property rights

[2] Compare also the terms of the Supreme Court's remand in *Helvering* v. *Safe Deposit Co.*, 316 U.S. 56, 66 (1942) with the holding of the Court of Appeals, 121 F. 2d 307, 315 (C.A. 4, 1941).

of the decedent's estate. See *White* v. *Thomas*, an unreported case (N.D. Tex. 1940, 27 A.F.T.R. 1163, 40-2 U.S.T.C. par 9708).

I can see no escape from the conclusion that the petitioners herein acquired their life interests under the circumstances designated in section 273.

Since, under my view, petitioners are not entitled to any amortization, I am not required to reach the second issue involved herein, namely, whether it is necessary for petitioners to allocate the amortization allowed between taxable income and taxable interest income. I am constrained to note, however, that I also disagree with the majority conclusion on this issue.

The difference between depreciation and amortization is one which has not been the subject of precise analysis in the decided cases. See, e.g., *KIRO, Inc.*, 51 T.C. 155, 167–168 (1968), and the cases cited therein. Compare Rev. Rul. 62–20, 1962–1 C.B. 21, with Rev. Rul. 60–358, 1960–2 C.B. 68. The statute and respondent's regulations, however, point up the difference. When Congress desired to permit deductions over a period less than the useful life of the property involved or in situations where the property had no measurable useful life, it did so by way of separate provisions rather than by amendment to the depreciation section of the Code. Compare, for example, section 167 (depreciation) with section 168 (amortization of emergency facilities), section 169 (amortization of grain storage facilities), section 174 (research and development expenditures), section 177, (trademark and trade name expenditures), and section 248 (corporate organizational expenditures). Moreover, it is noteworthy that in several of these sections the item covered by the permitted deduction is characterized as a "deferred expense." See secs. 174, 177, and 248. Compare also section 615(b) (exploration expenditures); section 616(b) (development expenditures). Similarly, in dealing with the deduction by lessees for improvements made on a lessor's property, Congress specifically distinguished between the deduction for depreciation, i.e., "for exhaustion, wear and tear, obsolescence" and "amortization." Compare secs. 167 and 178. See also sec. 1014(b) (9). This dichotomy is carefully preserved by respondent's regulations under section 167 dealing with depreciation, wherein it is provided that the deduction for amortization by a lessee is governed by sections 162 and 178. See sec. 1.167(a)–4, Income Tax Regs. The dichotomy has appeared in respondent's regulations since 1918 (see art. 109, Regs. 45) and is therefore deemed to have congressional approval and has the effect of law. See *Commissioner* v. *Noel's Estate*, 380 U.S. 678, 680 (1965); *Douglas H. Tanner*, 45 T.C. 145, 148 (1965), affirmed per curiam 363 F. 2d 36 (C.A. 4, 1966).

From the foregoing, it appears that where the deduction is determined by the useful life of the underlying property it should be taken

by way of depreciation under section 167 but where the deduction is determined by the useful life of the taxpayer's interest in the property, without regard to the useful life of the underlying property itself, it should be taken by way of amortization in the nature of a deferred expense under some other section. Compare *Crane* v. *Commissioner*, 331 U.S. 1 (1947). Under such rationale, write-off of the cost of petitioners' life interests is not governed by section 167.

Certain language in *KIRO, Inc., supra*, points in the direction of treating amortization as a section 167 deduction. However, in that case we were responding to a different factual situation and a different argument belatedly raised by respondent, namely, that the taxpayer's rights were in substance a lease. Moreover, we recognized that the fact that a deduction might be covered by section 167 did not preclude a holding that it also lay within the ambit of section 162. See *KIRO, Inc.*, 51 T.C. at 168.[3]

The question then is, what section should govern? If petitioners' cost had been incurred in connection with a "trade or business," the applicable section would be section 162. But petitioners were not so engaged and, since their life interests were held for the production of income, we must necessarily look to section 212. It has long been settled that sections 162 and 212 are correlative with respect to the classification of items for which deduction is permitted. *Trust of Bingham* v. *Commissioner*, 325 U.S. 365 (1945). Applying the foregoing rationale, the following conclusions appear in order: (1) Petitioners' deduction is for amortization, not depreciation; (2) the right to the deduction is not governed by section 167; (3) the character of the deduction is such that it falls within the ambit of section 162 and, by virtue of *Trust of Bingham* v. *Commissioner, supra*, within section 212 with respect to taxpayers such as petitioners. Such conclusion is fully consistent with the legislative concern which resulted in the specific provision dealing with interest in section 265, namely, congressional reluctance to hamper the marketing of tax-exempt securities; no mention is made of any amortization or depreciation deduction, for the obvious reason that tax-exempt securities are simply not the kind of property to which such deductions apply. Cf. *Whittemore* v. *United States*, 383 F. 2d 824 (C.A. 8, 1967); see H. Rept. No. 704, 73d Cong., 2d Sess. p. 23 (1934); S. Rept. No. 558, 73d Cong., 2d Sess. pp. 26–27 (1934); 78 Cong. Rec. 7831 (1934).

---

[3] The majority opinion herein states that, "It is not disputed that the amortized cost is deductible, if at all, under section 167(a)(2)." The record and briefs indicate that this merely means that the respondent did not seek to support his deficiency under any other section. But we are not necessarily precluded from deciding the case, on the facts as presented, on the basis of a legal theory not argued by the parties. See *Brook* v. *Commissioner*, 360 F. 2d 1011, 1013 (C.A. 2, 1966), reversing and remanding on other grounds a Memorandum Opinion of this Court; *Casco Products Corp.*, 49 T.C. 32, 36 (1967); *Estate of Firmin D. Fusz*, 46 T.C. 214, 215, fn. 2 (1966); 2 Casey, Federal Tax Practice, sec. 7.6, fn. 41.

Since section 212 is the governing section, section 265 requires that the deduction claimed must be disallowed insofar as it is allocable to tax-exempt interest.

RAUM, J., agrees with this dissent.