DUNLAP AND ASSOCIATES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5835–64. Filed February 28, 1967.

---

[3] Cf. *Marlen E. Pew, Jr.*, T.C. Memo. 1961–264.

*T. Newman Lawler* and *William O. Rockwood*, for the petitioner.
*Robert D. Whoriskey*, for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in income tax for the taxable year ended March 31, 1962, in the amount of $5,500. The issue is whether the respondent was correct in determining that the petitioner and its predecessor were parties to a reorganization under section 368(a)(1)(F) of the Internal Revenue Code of 1954; that consequently under section 381 of the Code the taxable year of the predecessor did not terminate at the time of the reorganization; and that therefore the predecessor and the petitioner were in error in filing returns for portions of the taxable year preceding and following the reorganization and thereby claiming the benefit of two surtax exemptions.

FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference.

The petitioner was incorporated on June 8, 1961, under the laws of the State of Delaware, is duly qualified to do business in the State of Connecticut, and has its principal office at Darien, Conn. It files its income tax returns on the basis of a taxable year ended March 31. It filed a Federal income tax return for the taxable period from June 29, 1961, to March 31, 1962, with the district director of internal revenue, Hartford, Conn.

The petitioner's predecessor, also named Dunlap & Associates, Inc. (hereinafter referred to as the New York corporation), was incorporated on April 15, 1948, under the laws of the State of New York. The New York corporation was engaged in providing a wide variety of scientific, research, engineering, consulting, development, and other services to agencies of the United States, including the armed services, and to private industry, maintaining offices in Stamford, Conn., Washington, D.C., and in Santa Monica and Sunnyvale, Calif. It filed income tax returns on the basis of a fiscal year ended March 31.

The New York corporation owned the controlling interest, but less than 80 percent, in three corporations, Clark, Channell, Inc. (referred to hereinafter as Channell), Public Service Research, Inc. (referred to hereinafter as PSR), and Agri Research, Inc. (referred to hereinafter as Agri). Channell was organized in 1955 under the laws of the State of Connecticut as a subsidiary of the New York corporation to provide various services in the area of personnel and management consulting. PSR was organized in 1959 under the laws of the State of Connecticut as a subsidiary of the New York corporation to provide various services in the area of research and consulting in public health, education, welfare, safety, and related fields. Agri was incorporated in 1960 under the laws of the State of Kansas as a subsidiary

of the New York corporation to provide research and consulting services in the areas relating to agricultural problems.

For several months commencing in early 1961 the New York corporation engaged in discussions with Dominick & Dominick, Inc. (hereinafter referred to as Dominick), an investment banking firm engaged in underwriting securities offerings, relative to the issuance and sale of its securities to the public. Dominick undertook to form a group of underwriters to offer the New York corporation's stock to the public.

On behalf of such group Dominick required that the minority stock interests of two of the New York corporation's subsidiaries, Channell and PSR, be acquired by the parent or that at least a sufficient portion of the minority stock be acquired as would permit the filing of consolidated income tax returns.

During the negotiations concerning the public financing, counsel for the New York corporation, who assisted in the negotiations, was required to give the underwriters a legal opinion as to the validity of the formation of the New York corporation and the actions of its board of directors. However, counsel found that the majority of the actions taken in the management of the New York corporation had been authorized by an executive committee, which was not an authorized body under New York law, and therefore such counsel was unable to render an opinion that all actions had been properly taken. As a result of such finding, counsel for the New York corporation recommended that a Delaware corporation be formed and that a reorganization be effected by which the New York corporation would be merged with the Delaware corporation. It was also recommended that the Delaware corporation simultaneously acquire the minority interests in Channell and PSR, or at least a sufficient interest as would permit the filing of consolidated income tax returns.

On May 26, 1961, the board of directors of the New York corporation adopted the following resolutions:

RESOLVED, that the President is authorized and instructed to have counsel procure the formation of a Delaware corporation to be called DUNLAP AND ASSOCIATES, INC., and

FURTHER RESOLVED, that this Corporation be merged and consolidated with and into DUNLAP AND ASSOCIATES, INC., a Delaware corporation, upon a twelve for one stock ratio, and that the terms and conditions of such merger and consolidation, the mode of carrying the same into effect, and the manner of distributing the shares of the new corporation among the stockholders of this corporation shall be as set forth in the proposed agreement of consolidation attached to and made a part of the minutes of this meeting * * *

Pursuant to the above resolution the petitioner was incorporated on June 8, 1961, with an authorized capital stock of 500,000 shares having a par value of $1 per share. All of the outstanding stock of the petitioner was issued to the New York corporation.

An organization meeting of the petitioner's board of directors was held on June 13, 1961, at which meeting, among other things, the board approved a resolution proposing the acquisition of the minority stock interest in Channell and PSR. The minutes of such meeting stated, in pertinent part, as follows:

The President next stated that upon completion of the merger, this corporation would own control of Public Service Research, Inc. and Clark, Channell, Inc., but that it would not own all of the issued and outstanding stock and that it was the belief of the officers that it would be in the best interests of the corporation, for reasons fully set forth in the resolutions and preambles hereafter adopted, to acquire the stock owned by individuals in said subsidiary corporations.

After full discussion, and on motion duly made and seconded, the following preambles and resolutions were unanimously adopted:

WHEREAS, Dunlap and Associates, Inc., a New York corporation, is being re-organized as a Delaware corporation by statutory merger into this corporation, subject to the approval of the stockholders of said New York corporation; and

WHEREAS, it is contemplated that after the merger the Common Stock of this corporation will be offered to the public under a Registration Statement to be filed pursuant to the Securities Act of 1933; and

WHEREAS, the management and control of certain existing partially owned subsidiaries to be acquired by this corporation in said merger will be facilitated if said subsidiaries are wholly owned; and

WHEREAS, such sole ownership will benefit the stockholders of this corporation and will permit more accurate reporting to such stockholders of consolidated earnings, will simplify the financial structure of this corporation and the allocation of personnel and proper functioning of employee benefits, and will otherwise improve and strengthen the operation of this corporation and subsidiaries:

Now, THEREFORE, BE IT RESOLVED, that this Corporation offer to the outstanding stockholders of Public Service Research, Inc. two and six-tenths (2%10) shares of the Common Stock of this corporation in exchange for each share of the common stock of Public Service Research, Inc., said exchange to become effective only after completion of the merger between the New York corporation and this corporation, and upon the tender by individual stockholders of sufficient shares so that the ownership by this corporation shall be not less than 80% of the voting power of all classes of stock of Public Service Research, Inc.;

FURTHER RESOLVED, that this corporation offer to the outstanding stockholders of Clark, Channell, Inc. one (1) share of the Common Stock of this corporation in exchange for two and one-half (2½) shares of the Common Stock of Clark, Channell, Inc., said exchange to become effective only after completion of the merger between the New York corporation and this corporation, and as and when declared to be effective by this corporation, and the tender by individual stockholders of sufficient shares so that the ownership by this corporation shall be not less than 80% of the voting power of all classes of stock of Clark, Channell, Inc.;

On June 27, 1961, the stockholders of the New York corporation approved the merger of such corporation into its wholly owned subsidiary, the petitioner.

Authorized capital of the New York corporation was 25,000 shares of common stock with a par value of $10 per share. Of its authorized capital, 13,323 shares were issued and outstanding as of June 28, 1961, and were held by approximately 125 shareholders of record. Pursuant to the terms of the merger, each share of the common stock of the New York corporation was exchanged for 12 shares of the common stock of the petitioner. Thus, 13,323 shares of the common stock of the New York corporation, representing a par value of $133,230 were exchanged for 159,876 shares of the common stock of the petitioner, representing a par value of $159,876. The difference of $26,646 was charged to the petitioner's capital surplus. A certificate of ownership and merger (under Delaware law) and a certificate of consolidation and merger (under New York law) were filed with the secretary of state of the States of Delaware and New York on June 29, 1961, and June 30, 1961, respectively.

On June 28, 1961, the petitioner pursuant to the terms of the resolution of its board of directors adopted June 13, 1961, made an exchange offer to the holders of the minority stock interests in Channell and PSR.[1] This offer was accepted by all of the minority stockholders of those corporations during the period from June 29, 1961, to July 7, 1961. The petitioner acquired such minority interests in Channell and PSR by issuing 2,280 and 5,460 shares, respectively, of its common stock to the minority shareholders of those corporations in exchange for their stock. Of such minority stockholders, four who had held no stock in the petitioner received a total of 380 shares. Channell and PSR thereby became wholly owned subsidiaries of the petitioner. Stock certificates of Channell and PSR representing the minority interests acquired by the petitioner were canceled on September 7, 1961, by the transfer agent for those corporations, and new stock certificates were then issued to the petitioner.

On June 29, 1961, the petitioner's board of directors authorized the filing with the Securities and Exchange Commission of a Registration Statement, on Form S-1, under the Securities Act of 1933, covering 60,000 shares of the petitioner's common stock to be sold under a proposed underwriting agreement with Dominick. Such stock, together with 15,000 shares of petitioner's stock offered by certain individuals, was offered pursuant to prospectus dated November 1, 1961.

The New York corporation filed an income tax return for the taxable period from April 1, 1961, to June 28, 1961, with the district director of internal revenue, Hartford, Conn., showing taxable income of $40,306.17 and took a surtax exemption of $25,000. The petitioner

---

[1] In its return for the taxable period Apr. 1, 1961, to June 28, 1961, the New York corporation reported that it owned 63.69 percent and 65.57 percent of the outstanding common stock of Channell and PSR, respectively.

in its return for the taxable period June 29, 1961, to March 31, 1962, showed taxable income of $67,419.47 and took a surtax exemption of $25,000.

In the notice of deficiency the respondent determined that the petitioner should have made a return for the full taxable year ended March 31, 1962, and that only one surtax exemption is allowable for such year. He stated:

It has been determined that the corporate reorganization which you have effected comes within the provisions of section 368(a)(1)(F) of the Internal Revenue Code of 1954. Pursuant to the provisions of section 381(b) of the Internal Revenue Code of 1954, that part of the taxable year before the reorganization and that part of the taxable year after the reorganization constitute a single taxable year, and an income tax return for the full taxable year is required to be filed by the acquiring corporation, notwithstanding the fact that such reorganization also qualifies under another provision of section 368(a)(1) of the Internal Revenue Code of 1954. The transferor corporation is not required to file an income tax return for any portion of such year. Since your income tax return was filed only for that part of the taxable year after reorganization, you failed to report your income for that part of the taxable year before reorganization. Accordingly, taxable income is increased in the amount of $40,306.17.

In computing the deficiency against the petitioner the respondent computed tax on the full amount of $107,725.64 of taxable income, allowing only one surtax exemption, and then credited the tax liability for the tax which had been paid by the New York corporation for the period April 1, 1961, to June 28, 1961. The deficiency determined $5,500, is the tax resulting from the elimination of the surtax exemption claimed by the New York corporation.

OPINION

The deficiency determined by the respondent resulted from his determination that the petitioner's predecessor, the New York corporation, did not have the right to file a return for the period preceding the merger, namely, the period April 1, 1961, to June 28, 1961, and claim the benefit of a surtax exemption for such period.

Section 11 of the Internal Revenue Code of 1954 provides for both a normal tax and a surtax on the taxable income of every corporation for each taxable year. The surtax is equal to 22 percent of the amount by which the taxable income exceeds $25,000. Section 441 of the Code provides that taxable income shall be computed on the basis of the taxpayer's taxable year, and that a taxable year may consist of a period of less than 12 months. Section 443 of the Code provides that a return for a period of less than 12 months shall be made when the taxpayer is in existence during only part of what would otherwise be his taxable year.

The respondent contends that the merger of the New York corporation into the petitioner, although qualifying as a reorganization

**548**

under section 368(a)(1)(A), I.R.C. 1954, also constituted a reorganization within the contemplation of section 368(a)(1)(F) of the Code;[2] that, accordingly, in view of the provisions of section 381(b)(1) of the Code,[3] the taxable year of the New York corporation did not end at the time of the reorganization; that therefore the petitioner was required to file a single tax return for the entire taxable year ended March 31, 1962; and that it was improper for the New York corporation to file a tax return for the portion of the taxable year

[2] Sec. 368(a)(1) of the Code provides:

(a) REORGANIZATION.—

(1) IN GENERAL.—For purposes of parts I and II and this part, the term "reorganization" means—

(A) a statutory merger or consolidation;

(B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of stock of another corporation if, immediately after the acquisition, the acquiring corporation has control of such other corporation (whether or not such acquiring corporation had control immediately before the acquisition);

(C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another corporation, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded;

(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356;

(E) a recapitalization; or

(F) a mere change in identity, form, or place of organization, however effected.

[3] Sec. 381 of the Code is entitled "Carryovers in Certain Corporate Acquisitions" and provides in part, as follows:

(a) GENERAL RULE.—In the case of the acquisition of assets of a corporation by another corporation—

\* \* \* \* \* \* \*

(2) in a transfer to which section 361 (relating to nonrecognition of gain or loss to corporations) applies, but only if the transfer is in connection with a reorganization described in subparagraph (A), (C), (D) (but only if the requirements of subparagraphs (A) and (B) of section 354(b)(1) are met), or (F) of section 368(a)(1), the acquiring corporation shall succeed to and take into account, as of the close of the day of distribution or transfer, the items described in subsection (c) of the distributor or transferor corporation, subject to the conditions and limitations specified in subsections (b) and (c).

(b) OPERATING RULES.—Except in the case of an acquisition in connection with a reorganization described in subparagraph (F) of section 368(a)(1)—

(1) The taxable year of the distributor or transferor corporation shall end on the date of distribution or transfer.

Sec. 1.381(b)–1(a)(2), Income Tax Regs., provides as follows:

*Reorganizations under section 368(a)(1)(F).* In the case of a reorganization qualifying under section 368(a)(1)(F) (whether or not such reorganization also qualifies under any other provision of section 368(a)(1)), the acquiring corporation shall be treated (for purposes of section 381) just as the transferor corporation would have been treated if there had been no reorganization. Thus, the taxable year of the transferor corporation shall not end on the date of transfer merely because of the transfer; a net operating loss of the acquiring corporation for any taxable year ending after the date of transfer shall be carried back in accordance with section 172(b) in computing the taxable income of the transferor corporation for a taxable year ending before the date of transfer; and the tax attributes of the transferor corporation enumerated in section 381(c) shall be taken into account by the acquiring corporation as if there had been no reorganization.

preceding the merger [4] and take a surtax exemption for such period. It is his position that the acquisition by the petitioner, after the merger, of the minority stock of Channell and PSR constituted reorganizations (under sec. 368(a)(1)(B)) which are separate and severable from the merger.

The petitioner, on the other hand, contends that both the merger of the New York corporation into the Delaware corporation (the petitioner) and the exchange of stock by petitioner for the minority stock interests in the two subsidiaries, Channell and PSR, were for the purpose of preparing for a public offering of stock and that therefore all such preliminary acts were integrated steps in a single plan of reorganization (under the doctrine of *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U.S. 179); that in view of the fact that there was a shift in stock ownership arising from its issuance of 7,740 shares of its stock for the minority stock interests of such subsidiaries, there was not a mere change in identity, form, or place of organization of the New York corporation within the meaning of section 368(a)(1)(F); [5] that therefore the taxable year of the New York corporation ended at the time of the reorganization; and that it was proper for the New York corporation to file a return for the period April 1, 1961, to June 28, 1961, and for the petitioner to file a return for the period June 29, 1961, to March 31, 1962, and for each to claim a surtax exemption.

Section 381 deals generally with the manner of treatment by the acquiring corporation of various specified items of the transferor corporation where there has been an acquisition of assets in connection with certain reorganizations and other transactions. While that section does not deal with the allowance of the surtax exemption, the petitioner apparently concedes, and we think properly, that its provisions regarding the date the taxable year shall end necessarily affect the allowance of such exemption in the case of a section 368(a)(1)(F) reorganization. As pointed out hereinabove, the surtax exemption is geared to the taxable year. Section 381(b) provides that the taxable year of the transferor corporation shall end on the date of transfer, except in the case of a reorganization described in subparagraph (F) of section 368(a)(1). If, therefore, there was here a reorganization under subparagraph (F) the taxable year of the New York corporation would not end on the date of transfer and the taxable income

[4] This contention of the respondent is consistent with his published administrative position, first taken in Rev. Rul. 57–276, 1957–1 C.B. 126, and reiterated in Rev. Rul. 58–422, 1958–2 C.B. 145, and Rev. Rul. 66–284, 1966–2 C.B. 8, that in view of the provisions of sec. 381(b) of the 1954 Code, an income tax return for the full taxable year is required to be filed by the acquiring corporation in a sec. 368(a)(1)(F) reorganization (the transferor corporation not being required to file a return for any portion of such year).

[5] The petitioner cites *Helvering* v. *Southwest Consolidated Corporation*, 315 U.S. 194, where the Supreme Court stated that a transaction which shifts the ownership of the proprietary interest in a corporation is "hardly a mere change in identity, form, or place of organization" within the meaning of sec. 112(g)(1)(E) of the Revenue Act of 1934, a predecessor to sec. 368(a)(1)(F), I.R.C. 1954.

would necessarily be computed by the petitioner on the basis of the full taxable year ended March 31, 1962, with the benefit of only one surtax exemption. See *Reef Corporation* v. *Commissioner* (C.A. 5) 368 F. 2d 125,[6] which held that, in view of section 381 of the Code, where there has been a reorganization qualifying under section 368(a)(1) (F), even though qualifying under some other subparagraph of section 368(a)(1), a notice of deficiency mailed to the successor corporation for the full taxable year was a proper notice.

While it appears that the formation of the petitioner under the laws of Delaware, the merger of the New York corporation into it, and the acquisition by the petitioner of the stock of the subsidiaries were all contemplated from the beginning and were deemed necessary to a public stock offering, this does not establish that all such actions were parts of a single transaction constituting one reorganization or one plan of reorganization.

The case of *Helvering* v. *Alabama Asphaltic Limestone Co., supra*, cited by the petitioner, involved an insolvency reorganization, as a result of which a new corporation was formed and the creditors obtained the stock of such new corporation. The plan, to which virtually all of the creditors had assented, provided for the formation of a new corporation, its acquisition of the assets of the insolvent corporation, and the distribution of the new corporation's stock to the creditors assenting to the plan. The assets first passed from the old corporation to a creditors' committee and then to the new corporation. The contention was made that the transaction did not meet the statutory definition of a reorganization because the properties acquired by the new corporation belonged at that time to the committee and not to the old corporation. The Supreme Court there held that the acquisition of the properties by the creditors' committee was merely an intermediate procedural device utilized to enable the new corporation to acquire all the assets of the old one pursuant to a single reorganization plan.

In *American Bantam Car Co.*, 11 T.C. 397, affd. (C.A. 3) 177 F. 2d 512, certiorari denied 339 U.S. 920, we stated:

In determining whether a series of steps are to be treated as a single indivisible transaction or should retain their separate entity, the courts use a variety of tests. Paul, Selected Studies in Federal Taxation, 2d series, pp. 200–254. Among the factors considered are the intent of the parties, the time element, and the pragmatic test of the ultimate result. An important test is that of mutual interdependence. Were the steps so interdependent that the legal rela-

---

[6] The Court of Appeals affirmed in part and reversed in part a Memorandum Opinion of this Court. The reversal was upon the question of whether there was a sec. 368(a)(1)(F) reorganization. However, the facts germane to that issue in the instant case are not analogous to those there involved. Since in the *Reef* case we held that there was not a sec. 368(a)(1)(F) reorganization, we did not reach the question whether, had there been such a reorganization, a notice of deficiency to the successor corporation for the full taxable year would be proper.

tion's created by one transaction would have been fruitless without a completion of the series?

See also *Scientific Instrument Co.*, 17 T.C. 1253, affd. (C.A. 6) 202 F. 2d 155.

We do not consider that the merger of the New York corporation into the petitioner and the exchange by the petitioner of some of its stock for the minority stock interests in the subsidiaries were mutually interdependent, even though both were contemplated within a general plan. See *Scientific Instrument Co., supra*. Indeed, although it was planned from the beginning that the petitioner would make offers to obtain the minority interests of the subsidiaries, there was no assurance, at the time of the merger, that such minority interests would accept the offers. Nor was there any provision in the merger agreements that the transfer of the New York corporation's assets to the petitioner would be undone if the minority stockholders were not responsive to the offers.

In our opinion it must be considered that the various acts accomplished involved more than one reorganization within the contemplation of the statute. The merger of the New York corporation into the petitioner constituted a separate reorganization under section 368(a)(1)(A) and (F), and the acquisitions of the minority interests in the subsidiaries constituted two separate reorganizations under section 368(a)(1)(B).

The petitioner urges that both the merger and the acquisitions of the minority interests in the subsidiaries "constituted a reorganization under sections 368(a)(1)(A) and 368(a)(1)(B)," and states that a "series of transactions (each admitted to be a tax-free reorganization in its own right) can constitute the steps of an integrated plan of reorganization." As pointed out above, we think these transactions were not interdependent and that the plan was not to effectuate one reorganization, but three separate reorganizations.

It may be added that even if the various acts were considered as integral parts of one transaction, we fail to see how the end result would come within either of the definitions of reorganization cited by the petitioner or, indeed, within any one of the definitions contained in section 368(a)(1).

After the merger of the New York corporation into the petitioner, the petitioner owned the same assets and business as had been owned by the New York corporation and the stockholders and their proportionate proprietary interests remained unchanged. Only the State of incorporation had been changed. There was thus a mere change in place of organization, and the merger, in addition to qualifying as a reorganization under subparagraph (A), also qualified as a reorganization under section 368(a)(1)(F).

We accordingly conclude that the respondent properly held that the New York corporation was not entitled to file a return for the period April 1, 1961, to June 28, 1961, and claim a surtax exemption for such period.

*Decision will be entered for the respondent.*