CASCO PRODUCTS CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3129–65. Filed October 24, 1967.

*Paul A. Teschner*, for the petitioner.
*Kenneth B. Samuels*, for the respondent.

34

OPINION

The factual situation against which the decision herein must be made is extremely narrow. Standard Kollsman set out in 1960 to become the sole shareholder of Old Casco. Pursuant to a public tender, it succeeded in acquiring approximately 91 percent thereof through voluntary sales by existing shareholders. Having found that its public tender could not entirely accomplish its purpose, Standard Kollsman resorted to the legal technique of a merger, permitted under Connecticut law, to force out the remaining shareholders of Old Casco. As its instrument, it formed New Casco and acquired 100 percent of its issued and outstanding stock. By virtue of that ownership and its ownership of 91 percent of the shares of Old Casco, it accomplished a merger of Old Casco into New Casco, pursuant to which its shares in Old Casco were canceled without payment and the shares of the remaining shareholders were to be paid for in cash. Simultaneously with the merger becoming effective, the obligation to make such cash payment devolved upon New Casco.[1]

Against this factual background, petitioner makes these arguments: First, it asserts that the loss carryback is allowable under section 172 [2] on the ground that no reorganization took place and that realistically there was a legal identity betwen Old Casco and New Casco. Alternatively, petitioner argues that, if a reorganization did in fact occur, it was an (F) reorganization under section 368(a)(1) and that therefore the loss carryback is allowable under section 381(b).

Respondent counters with the arguments that, given the presence of business purpose, continuity of business enterprise, and continuity of proprietary interest, petitioner's use of the reorganization form requires that the transaction be treated as a reorganization; that it cannot be an (F) reorganization because of the 9-percent shift in proprietary interest between Old Casco and New Casco; and that consequently the loss carryback was properly disallowed under section 381(b).

---

[1] It is not clear under Connecticut law whether this obligation first became that of Old Casco and was then assumed by New Casco or whether it originally arose as an obligation of New Casco, but resolution of this esoteric question of local law is unnecessary to our decision.

[2] All references are to the Internal Revenue Code of 1954, unless otherwise specified.

Thus, both parties invite us to engage in an interpretative exercise as to the scope of section 368(a)(1)(F) and the relationship between sections 381(b) and 172. We decline the invitation to attempt to navigate these treacherous shoals. See *Reef Corporation* v. *Commissioner*, 368 F. 2d 125 (C.A. 5, 1966), certiorari denied 386 U.S. 1018, affirming in part and reversing as to the (F) reorganization issue a Memorandum Opinion of this Court; *Estate of Bernard H. Stauffer*, 48 T.C. 277 (1967), on appeal (C.A. 9, Sept. 5, 1967); *Associated Machine*, 48 T.C. 318 (1967), on appeal (C.A. 9, Sept. 15, 1967); *Dunlap & Associates, Inc.*, 47 T.C. 542 (1967). Instead, we take a different tack.

There is no question, and indeed, respondent so concedes, that if Old Casco had redeemed the shares of the minority shareholders and had continued in business the loss carryback would have clearly been available. As we see it, the circumstances herein should not produce a different result. To hold otherwise would be to exalt form over substance and to accord an unjustifiable vitality to the merger format which was admittedly adopted only as a "legal technique."

In this case, Standard Kollsman sought to become the sole shareholder of Old Casco. Its voluntary efforts having failed as to 9 percent of the shares, it resorted to a "squeeze-out" technique via the merger route, as permitted by Connecticut law. It formed a new corporation (New Casco) under the same State law [3] to conduct the same business at the same location with the same employees. In fact, upon the accomplishment of the merger, the New Casco was identical in all respects to the Old Casco with a single exception. That exception was that, although there were no new shareholders, 9 percent of the holders of Old Casco shares did not hold any shares in New Casco.

Taxwise, New Casco was merely a meaningless detour along the highway of redemption of the minority interests in Old Casco. The merger itself, although in form a reorganization, had as its sole purpose the accomplishment of the redemption—an objective which Standard Kollsman had not been able to achieve through its original program of voluntary acquisition of all of the Old Casco shares. On this basis, we think that the instant case falls squarely within the ambit of the principles which we laid down in *Utilities & Industries Corporation*, 41 T.C. 888 (1964), reversed on this issue sub nom. *The South Bay Corporation* v. *Commissioner*, 345 F. 2d 698 (C.A. 2, 1965).

---

[3] Where incorporation takes place in another 'State, different corporation laws imposing different rights and obligations apply. Often such incorporation is accomplished in a State such as Delaware in order to obtain the greater flexibility provided by its laws. Under these circumstances, an independent significance may attach to the merger so as to require it to be treated as a true reorganization. Cf. *Reef Corporation* v. *Commissioner*, 368 F. 2d 125 (C.A. 5, 1966) (Texas to Delaware); *Dunlap & Associates, Inc.*, 47 T.C. 542 (1967) (New York to Delaware).

That case involved a question of the basis of certain assets acquired by the taxpayer through the purchase-of-stock-merger route rather than by direct purchase of the assets themselves. Since the taxpayer had not shown its inability to accomplish its objective by such direct purchase, we held that the mergers had to be treated as reorganizations because they were not so integrated or interdependent as to have been *solely for the purpose* of acquiring assets. The Second Circuit Court of Appeals reversed us on the ground that we imposed too strict a test. We need not now decide the extent to which we will adopt the broader approach of the Court of Appeals, for it is clear that the instant situation falls within our stricter test. Cf. *Long Island Water Corporation*, 36 T.C. 377 (1961); *Kimbell-Diamond Milling Co.*, 14 T.C. 74 (1950), affirmed per curiam 187 F. 2d 718 (C.A. 5, 1951). Here, New Casco was formed and the merger route utilized for the sole purpose of redeeming the minority shares. This course was followed because Standard Kollsman had no alternative way of accomplishing its objective of sole ownership of Old Casco; its efforts to do so via the stock-acquisition route had been tried and had failed. Under these circumstances, the merger was a reorganization in form only and should consequently be ignored as such. What took place was a redemption of 9 percent of the Old Casco shares and no more.[4] Under the limited circumstances of this case, we hold that New Casco was simply a continuation of Old Casco and the loss carryback should have been allowed.

In view of our holding, we do not reach the question whether, if there had been a reorganization which did not qualify under section 368(a)(1)(F), petitioner would nevertheless have been entitled to carry back that portion of the 1961 loss allocated to the period prior to the effective date of the merger.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

---

RAUM, *J.*, dissenting: I cannot agree that the merger of Old Casco into New Casco was only "in form a reorganization" and that New Casco was "merely a meaningless detour." New Casco was not a corporation with transitory life; it was not a mere stopping place en route to an ultimate destination; it was itself the end product of the transactions before us, and indeed is the petitioner herein. Old Casco was a corporation existing for a number of years and the deficiencies in controversy were determined with respect to *its* tax years, not those of New Casco. Both Old Casco and New Casco were separate, distinct

---

[4] The fact that Standard Kollsman did not seek to acquire 100-percent ownership of Old Casco by causing that corporation to attempt voluntary redemption of the minority shares is not significant. To have endeavored so to do would have constituted a meaningless ritual in view of the unsuccessful efforts to acquire such shares directly.

viable corporations. One was merged into the other in order to squeeze out a 9-percent minority stockholder interest. Such merger was a corporate reorganization, and section 381(b)(3) forbids the carryback of a postreorganization net loss to a taxable year of the predecessor corporation unless the transaction is a reorganization "described in subparagraph (F) of section 368(a)(1)." I can see no escape from the necessity of determining whether this reorganization fell within (F).

The question whether the elimination of a 9-percent adverse minority interest may be ignored or regarded as *de minimis* in order to satisfy the requirement of (F) that there be a "mere change in identity, form, or place of organization" is a teasing and difficult one. And I can understand why one might wish to avoid it. But it cannot be side-stepped here and must be faced. In failing to address itself to the issue thus presented and argued by the parties, I think the majority erred. I express no opinion on the question itself at this time until it is considered by the Court.

WITHNEY, ATKINS, SCOTT, and FEATHERSTON, *JJ.*, agree with this dissenting opinion.

———

SCOTT, *J.*, dissenting: I respectfully disagree with the holding of the majority that the merger of Old Casco into New Casco was a reorganization in form only and should be ignored. The reorganization was in accordance with provisions of the laws of Connecticut whereby the holders of 91 percent of the stock of Old Casco were able to accomplish their objective of becoming 100-percent stockholders of a new corporation which owned the operating assets and conducted the business previously conducted by Old Casco. Corporate reorganizations provided for by State laws often effect little substantive change in the equitable ownership of a corporation or the nature of the corporate business. However, the Federal tax consequences of any reorganization are controlled by the specific provisions of the Internal Revenue Code.

In my opinion the case should have been decided by a determination of whether the reorganization here involved was "a mere change in identity, form, or place of organization," so as to constitute a reorganization within the meaning of section 368(a)(1)(F).

RAUM, WITHEY, and ATKINS, *JJ.*, agree with this dissenting opinion.